## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

SERVICE EMPLOYEES
INTERNATIONAL
UNION HEALTH AND WELFARE FUND
11 Dupont Circle, N.W., Suite 900
Washington, DC 20036-1202

and

ANNA BURGER, MICHAEL KERR,
VALERIE LONG, ERICK IRELAND,
DAVID MONROE, LISA HETRICK AND
MICHAEL RITZ,
TRUSTEES OF THE SERVICE
EMPLOYEES
INTERNATIONAL UNION HEALTH AND
WELFARE FUND
11 Dupont Circle, N.W., Suite 900
Washington, DC 20036-1202

       Plaintiffs,

vs.

SKYLINE BUILDING SERVICES, INC.
1302 W. Randolph St.
Chicago, IL 60607

       Defendant.

Serve:
Ivar R. Azeris
Agent for Service of Process
10 S. La Salle St.
Chicago, IL 60603

John Sochacz
Skyline Building Services, Inc.
President
1302 W. Randolph St.
Chicago, IL 60607

**Civil Case No.**

## COMPLAINT UNDER ERISA FOR DELINQUENT EMPLOYER
## CONTRIBUTIONS, INTEREST, LIQUIDATED DAMAGES

### INTRODUCTION, JURISDICTION AND VENUE

1.　　This is a civil action brought by an employee benefit plan and by the Trustees of an employee benefit plan pursuant to Sections 502(a)(3), (d)(1), (g)(2) and 515 of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§ 1132(a)(3), (d)(1), (g)(2) and 1145 and Section 301(a) of the Labor Management Relations Act of 1947, as amended ("LMRA"), 29 U.S.C. § 185(a) to collect unpaid collectively bargained contributions, interest and liquidated damages owed by the Defendant.

2.　　Jurisdiction is conferred upon this Court by Section 502(e) and (f) of ERISA, 29 U.S.C. § 1132(e) and (f), and Section 301(c) of the LMRA, 29 U.S.C. § 185(c). Jurisdiction also lies under 28 U.S.C. § 1331.

3.　　Venue is proper under Section 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2), as the Service Employees International Union Health and Welfare Fund is administered in this District.

### PARTIES

4.　　Plaintiff Service Employees International Union Health and Welfare Fund (the "SEIU Health & Welfare Fund") is an employee welfare benefit plan within the meaning of Section 3(2), (3) of ERISA, 29 U.S.C. § 1002(2), (3), and a multiemployer plan within the meaning of Section 3(37)(A) of ERISA, 29 U.S.C. § 1002(37)(A), established and maintained for the purpose of providing welfare benefits to eligible employees, their families and dependents. The SEIU Health & Welfare Fund is and at all times material herein has been, a jointly administered trust fund established pursuant to Section 302(c)(5) of the LMRA, 29

U.S.C. § 186(c)(5). The SEIU Health & Welfare Fund is administered at 11 Dupont Circle, N.W., Suite 900, Washington, D.C. 20036.

5.       Plaintiff Trustees of the SEIU Health & Welfare Fund, Anna Burger, Michael Kerr, Valarie Long, Erick Ireland, Dave Monroe, Lisa Hetrick and Michael Ritz, are the duly authorized Trustees (the "Trustees") of the SEIU Health & Welfare Fund whose duty it is to administer the SEIU Health & Welfare Fund for the benefit of the participants and beneficiaries of the SEIU Health & Welfare Fund. Plaintiff Trustees are fiduciaries within the meaning of 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A), and are authorized and empowered to maintain this action.

6.       Defendant Skyline Building Services, Inc. ("Defendant") is a corporation operating under the laws of the state of Illinois and at all times herein was an "employer in an industry affecting commerce" as defined in Sections 501(1), (3), and 2(2) of the LMRA, 29 U.S.C. §§ 142(1), (3) and 152(2); Section 3(5), (9), (11), (12) of ERISA, 29 U.S.C. § 1002(5), (9), (11), (12).

## FACTUAL BACKGROUND

7.       At all relevant times, Service Employees International Union, Local 1 - WI Division (the "Union") has been the exclusive collective bargaining agent for certain of Defendant's employees.

8.       On September 12, 2005 the Defendant entered into a collective bargaining agreement ("Collective Bargaining Agreement") with the Union effective for the period August 1, 2003 through July 31, 2006. A true, correct and complete copy of the Collective

3

Bargaining Agreement is attached as Plaintiffs' Exhibit 1. A copy of the signature page binding

Skyline Building Services, Inc. to the Collective Bargaining Agreement is attached as Plaintiffs'

Exhibit 2.

9.      In accordance with the Collective Bargaining Agreement, Defendant must

contribute in the amount of $261.46 per month per employee to the SEIU Health & Welfare

Fund to provide Health, Vision and Dental coverage to all eligible employees. See Plaintiffs'

Exhibit 1, Article 14, Section 4, p. 12.

10.     The SEIU Health & Welfare Fund is governed pursuant to the SEIU Health &

Welfare Fund's Agreement and Declaration of Trust ("Trust Agreement"). A true and complete

copy of the Trust Agreement is attached as Plaintiffs' Exhibit 3. Pursuant to the Trust

Agreement, the Trustees have adopted a Statement of Policy for Collection of Delinquent

Contributions ("Collection Policy"). A true and complete copy of the Collection Policy is

attached as Plaintiffs' Exhibit 4. Although the rate of contributions is established by the

Collective Bargaining Agreement, the Collection Policy otherwise governs the terms and

conditions of the contributing employers' contributions to the SEIU Health & Welfare Fund and

is binding on all contributing employers.

11.     Pursuant to Section 2 of the Collection Policy, contributions are due no later than

the fifteenth (15th) day of the month following the month in which the covered work is

performed. See Plaintiffs' Exhibit 4, p. 2.

12.     The Collection Policy provides that an employer delinquent in its contribution

obligations to the SEIU Health & Welfare Fund is liable for interest at the rate of ten percent

4

(10%) per annum compounded daily and liquidated damages at the rate of twenty percent (20%) of the amount of the contributions which are owed or the full amount of interest on the delinquent contributions, whichever is greater.  Plaintiffs' Exhibit 4, Section 2, pp. 8-9.

13.     Article IX, Section 2 of the Trust Agreement provides that an employer must submit complete remittance reports to the SEIU Health & Welfare Fund with the employer's contributions.  See Plaintiffs' Exhibit 3, pp. 43-33.  The Trustees have determined that each remittance report must contain the names of each covered employee and the number of compensable hours for each employee during the reporting month.  This information is necessary in order for the SEIU Health & Welfare Fund to determine the eligibility for benefits of the Defendant's employees and their dependents and to verify that the employer remitted the correct amount of contributions for the reported hours.

14.     The Trust Agreement provides that in any action brought by the SEIU Health & Welfare Fund and its Trustees to recover unpaid contributions, the delinquent employer shall be liable for reasonable attorneys' fees and all reasonable costs incurred in the collection process, including court fees, audit fees, etc.  Plaintiffs' Exhibit 3, Article IX, Section 6, p. 46.

15.     Pursuant to Section 502(g) of ERISA, if judgment is entered against Defendant, Plaintiffs are entitled to an award of: (1) unpaid contributions; (2) interest on the unpaid contributions; (3) the greater of the interest on the unpaid contributions or liquidated damages provided for under the Trust Agreement not in excess of twenty percent (20%) of the amount owed as determined by the court; (4) reasonable attorney's fees and costs; and (5) other legal or equitable relief as deemed appropriate by the Court.  29 U.S.C. § 1132(g).

5

## THE DELINQUENCY

16.     Under the Collective Bargaining Agreement, Defendant was required to make contributions at a rate of $261.46 per month to the SEIU Health & Welfare Fund for each of its covered employees.  The Defendant has failed to meet it obligations under the Collective Bargaining Agreement.

17.     Based on the remittance reports for the month of November 2006, Defendant owed $2,876.06 in contributions.  Defendant submitted contributions in the amount of $2,745.29, leaving a delinquency of $180.77 for that month.

18.     Based on the remittance reports for the months of April 2006 and July 2006, Defendant owed $12,550.08.  Defendant submitted two checks totaling $12,550.08 on October 3, 2006 for contributions owed to the SEIU Health & Welfare Fund.  These checks were not honored by Defendant's bank due to insufficient funds, leaving a delinquency of $12,550.08 for the months of April 2006 and July 2006.

19.     Defendant submitted late contributions for the months of December 2005, and February, March, May, and June 2006.  For the month of December 2005, payment of contributions was due January 15, 2006 and paid on February 22, 2006.  For the month of February 2006, payment of contributions was due March 15, 2006, and paid on May 19, 2006.  For the month of March 2006, payment of contributions was due April 15, 2006, and paid on May 19, 2006.  For the month of May 2006, payment of contributions was due June 15, 2006, and paid on August 25, 2006.  For the month of June 2006, payment of contributions was due July 15, 2006 and paid on August 25, 2006.

20. As a result of the Defendant's delinquencies and late payments, Defendant owes the SEIU Health & Welfare Fund $743.02 in interest and $1,372.66 in liquidated damages as of September 30, 2007.

21. The failure of Defendant to submit all contributions due threatens the SEIU Health & Welfare Fund's ability to provide benefits to the covered employees. The Defendant's failure to pay all contributions due has caused great harm to the SEIU Health & Welfare Fund, including, but not limited to, the following: they have caused the SEIU Health & Welfare Fund to incur collection and other expenses associated with pursuing this delinquency and unpaid contributions; they have caused a loss of the time value of the delinquent and unpaid contributions to the SEIU Health & Welfare Fund; and they have resulted in a discrediting of the Trustees' ability to enforce obligations owed to it, which may result in other employers utilizing the same tactics.

22. Prior to commencing this lawsuit, the SEIU Health & Welfare Fund sent several letters to Defendant in an attempt to obtain the delinquent contributions from Defendant. Defendant has not responded to these letters. There is little prospect that, lacking judicial compulsion, Defendant will satisfy its obligations to the SEIU Health & Welfare Fund, and pay the delinquent and unpaid contributions, liquidated damages and interest due on the delinquent and unpaid contributions.

## COUNT

23. Plaintiffs reallege and incorporate Paragraphs 1 through 22.

24.     This claim arises under Sections 502(a)(3) and 515 of ERISA, 29 U.S.C. §§ 1132(a)(3) and 1145.

25.     Defendant is delinquent to the SEIU Health & Welfare Fund for unpaid contributions. Based on the remittance reports filed by the Defendants, Defendant owes $12,680.85 to the SEIU Health & Welfare Fund for unpaid contributions for the months of November 2005, April 2006 and July 2006.

26.     In addition, Defendant has submitted untimely contributions to the SEIU Health & Welfare Fund. Defendant is required to pay interest and liquidated damages on its unpaid contributions during the months of November 2005, April 2006 and July 2006, as well as late contributions for the months of December 2005, and February, March, May, and June 2006. Defendant owes a total of $743.02 in interest and $1,372.66 in liquidated damages for late and unpaid contributions as of October 1, 2007. Interest on Defendant's unpaid contributions continues to accrue, and will continue to accrue until paid in full.

**WHEREFORE**, Plaintiffs respectfully request that the Court:

1.     Declare that Defendant is delinquent in remitting contributions, interest and liquidated damages to the SEIU Health & Welfare Fund pursuant to the Collective Bargaining Agreement, Collection Policy, Trust Agreement, and ERISA section 502(g)(2).

2.     Enter judgment in favor of the Plaintiffs in the amount of $12,680.85 for the Defendant's unpaid contributions for the months of April, July and November 2006;

3.     Enter judgment for interest in the amount of $743.02 and liquidated damages in the amount of $1,372.66, accrued through September 30, 2007 as required by the Collective

8

Bargaining Agreement, the Collection Policy and Section 502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2);

4.    Enter judgment for any interest that has accrued or will accrue after October 1, 2007 on all unpaid contributions;

5.    Enter judgment for Plaintiff's attorneys' fees and costs, as required by the Collective Bargaining Agreement, the Trust Agreement and Section 502(g) of ERISA; and

6.    Grant such further relief as the Court may deem appropriate.

Respectfully Submitted

Richard C. Welch, DC Bar # 485756
Mooney, Green, Baker & Saindon, P.C.
1920 L Street, NW
Washington, D.C. 20036
(202) 783-0010
(202) 783-6088 Facsimile
rwelch@mooneygreen.com
Counsel for the Plaintiffs

Dated: October 15, 2007

CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Service Employees International Union Health and Welfare Fund, et. al | Skyline Building Services, Inc. |

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF __D.C.__
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT __Cook__
(IN U.S. PLAINTIFF CASES ONLY)
NOTE  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Richard C. Welch
Mooney,Green, Baker & Saindon, PC
1920 L Street, NW, Suite 400
Washington, DC  20036

ATTORNEYS (IF KNOWN)

## II. BASIS OF JURISDICTION
(PLACE an x IN ONE BOX ONLY)

□ 1 U.S. Government Plaintiff

XX Federal Question
(U.S. Government Not a Party)

□ 2 U.S. Government Defendant

□ 4 Diversity
(Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | □ 1 | □ 1 | Incorporated or Principal Place of Business in This State | □ 4 | □ 4 |
| Citizen of Another State | □ 2 | □ 2 | Incorporated and Principal Place of Business in Another State | □ 5 | □ 5 |
| Citizen or Subject of a Foreign Country | □ 3 | □ 3 | Foreign Nation | □ 6 | □ 6 |

## IV.  CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

| □ A. Antitrust | □ B. Personal Injury/ Malpractice | □ C. Administrative Agency Review | □ D. Temporary Restraining Order/Preliminary Injunction |
|---|---|---|---|
| □ 410 Antitrust | □ 310 Airplane<br>□ 315 Airplane Product Liability<br>□ 320 Assault, Libel & Slander<br>□ 330 Federal Employers Liability<br>□ 340 Marine<br>□ 345 Marine Product Liability<br>□ 350 Motor Vehicle<br>□ 355 Motor Vehicle Product Liability<br>□ 360 Other Personal Injury<br>□ 362 Medical Malpractice<br>□ 365 Product Liability<br>□ 368 Asbestos Product Liability | □ 151 Medicare Act<br><br>**Social Security:**<br>□ 861 HIA ((1395ff)<br>□ 862 Black Lung (923)<br>□ 863 DIWC/DIWW (405(g)<br>□ 864 SSID Title XVI<br>□ 865 RSI (405(g)<br><br>**Other Statutes**<br>□ 891 Agricultural Acts<br>□ 892 Economic Stabilization Act<br>□ 893 Environmental Matters<br>□ 894 Energy Allocation Act<br>□ 890 Other Statutory Actions (If Administrative Agency is Involved) | Any nature of suit from any category may be selected for this category of case assignment.<br><br>*(If Antitrust, then A governs)* |

## □ E. General Civil (Other) OR □ F. Pro Se General Civil

**Real Property**
□ 210 Land Condemnation
□ 220 Foreclosure
□ 230 Rent, Lease & Ejectment
□ 240 Torts to Land
□ 245 Tort Product Liability
□ 290 All Other Real Property

**Personal Property**
□ 370 Other Fraud
□ 371 Truth in Lending
□ 380 Other Personal Property Damage
□ 385 Property Damage Product Liability

**Bankruptcy**
□ 422 Appeal 28 USC 158
□ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
□ 535 Death Penalty
□ 540 Mandamus & Other
□ 550 Civil Rights
□ 555 Prison Condition

**Property Rights**
□ 820 Copyrights
□ 830 Patent
□ 840 Trademark

**Federal Tax Suits**
□ 870 Taxes (US plaintiff or defendant
□ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
□ 610 Agriculture
□ 620 Other Food &Drug
□ 625 Drug Related Seizure of Property 21 USC 881
□ 630 Liquor Laws
□ 640 RR & Truck
□ 650 Airline Regs
□ 660 Occupational Safety/Health
□ 690 Other

**Other Statutes**
□ 400 State Reapportionment
□ 430 Banks & Banking
□ 450 Commerce/ICC Rates/etc.
□ 460 Deportation

□ 470 Racketeer Influenced & Corrupt Organizations
□ 480 Consumer Credit
□ 490 Cable/Satellite TV
□ 810 Selective Service
□ 850 Securities/Commodities/ Exchange
□ 875 Customer Challenge 12 USC 3410
□ 900 Appeal of fee determination under equal access to Justice
□ 950 Constitutionality of State Statutes
□ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| □ **G.  Habeas Corpus/ 2255**<br><br>□ 530 Habeas Corpus-General<br>□ 510 Motion/Vacate Sentence | □ **H.  Employment Discrimination**<br><br>□ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | □ **I.  FOIA/PRIVACY ACT**<br><br>□ 895 Freedom of Information Act<br>□ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | □ **J.  Student Loan**<br><br>□ 152 Recovery of Defaulted Student Loans (excluding veterans) |
| --- | --- | --- | --- |
| ☒ **K.  Labor/ERISA (non-employment)**<br><br>□ 710 Fair Labor Standards Act<br>□ 720 Labor/Mgmt. Relations<br>□ 730 Labor/Mgmt. Reporting & Disclosure Act<br>□ 740 Labor Railway Act<br>□ 790 Other Labor Litigation<br>☒ 791 Empl. Ret. Inc. Security Act | □ **L.  Other Civil Rights (non-employment)**<br><br>□ 441 Voting (if not Voting Rights Act)<br>□ 443 Housing/Accommodations<br>□ 444 Welfare<br>□ 440 Other Civil Rights<br>□ 445 American w/Disabilities-Employment<br>□ 446 Americans w/Disabilities-Other | □ **M.  Contract**<br><br>□ 110 Insurance<br>□ 120 Marine<br>□ 130 Miller Act<br>□ 140 Negotiable Instrument<br>□ 150 Recovery of Overpayment & Enforcement of Judgment<br>□ 153 Recovery of Overpayment of Veteran's Benefits<br>□ 160 Stockholder's Suits<br>□ 190 Other Contracts<br>□ 195 Contract Product Liability<br>□ 196 Franchise | □ **N.  Three-Judge Court**<br><br>□ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

☒ 1 Original Proceeding □ 2 Removed from State Court □ 3 Remanded from Appellate Court □ 4 Reinstated or Reopened □ 5 Transferred from another district (specify) □ Multi district Litigation □ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

Sections 502(a)(3), (d)(1), (g)(2) and 515 of ERISA 29 U.S.C §§ 1132(a)(3), (d)(1), (g)(2) and 1145 & 29
U.S.C.§185(a) to collect unpaid collectively bargaining contributions, interest and liquidated damages, injunctive relief

| **VII.  REQUESTED IN COMPLAINT** | CHECK IF THIS IS A CLASS □ ACTION UNDER F.R.C.P. 23 | **DEMAND $** $14,796.53 | Check YES only if demanded in complaint **JURY DEMAND:** □ YES ☒ NO |
| --- | --- | --- | --- |

**VIII. RELATED CASE(S) IF ANY**    (See instruction)    □ YES    □ NO    If yes, please complete related case form.

DATE  10/15/2007  SIGNATURE OF ATTORNEY OF RECORD

---

### INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.    COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.   CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.   CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.   CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.  RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

# EXHIBIT 1

**COLLECTIVE BARGAINING AGREEMENT**

**Between**

**SEIU LOCAL1, AFL-CIO, CLC**

**and**

**<u>AMERICAN BUILDING MAINTENANCE</u>**

**<u>ELITE MAINTENANCE</u>**

**<u>KIMCO CORPORATION</u>**

**<u>LAKESIDE BUILDING MAINTENANCE</u>**

**<u>THE MILLARD GROUP</u>**

**<u>MODERN MAINTENANCE</u>**

**<u>ONESOURCE</u>**

**<u>REGENCY JANITORIAL SERVICE</u>**

**<u>PERFORMANCE CLEAN</u>**

**<u>TOTAL MAINTENANCE MANAGEMENT</u>**

# AUGUST 1, 2003 THROUGH JULY 31, 2006

Dear SEIU Local 1, Members,

Please take the time to read through your contract. It is the guide to your wages, benefits, and working conditions at American Building Maintenance, Elite Maintenance, Kimco Corporation, Lakeside Building Maintenance, The Millard Group, Modern Maintenance, One Source, Performance Clean, Regency Janitorial Service and Total Maintenance Management. Your co-workers fought hard to guarantee the benefits and rights contained in these pages. It is up to all of us to ensure that they are recognized and honored by American Building Maintenance, Elite Maintenance, Kimco Corporation, Lakeside Building Maintenance, The Millard Group, Modern Maintenance, One Source, Performance Clean, Regency Janitorial Service and Total Maintenance Management. If you think your rights are being violated, make sure you tell a Work Site Leader - you can find their names and departments on your Union bulletin boards.

We also want to make you aware of your WEINGARTEN RIGHTS. If you think you are going to be disciplined or asked questions that may lead to discipline, ALWAYS ask for a Work Site Leader. You do not have to answer any questions without a Union Work Site Leader present. For your protection, always ask for Union representation.

To get involved in your Union, come to a meeting or ask a Work Site Leader.

In Solidarity,
SEIU Local 1

Can't find a Work Site Leader? Call our Office.
Your Union Representative is:

Dave Somerscales
414-223-0090, extension 101

# TABLE OF CONTENTS

**PREAMBLE**

| | | |
|---|---|---|
| **ARTICLE 1:** | **UNION RECOGNITION** | **Page - 4** |
| **ARTICLE 2.** | **NON-DISCRIMINATION** | **Page - 4** |
| **ARTICLE 3.** | **UNION SECURITY/CHECKOFF** | **Page - 4** |
| **ARTICLE 4.** | **UNION VISITS** | **Page- 5** |
| **ARTICLE 5.** | **WORKING CONDITIONS** | **Page- 5** |
| **ARTICLE 6.** | **SENIORITY** | **Page - 6** |
| **ARTICLE 7.** | **SAFETY** | **Page - 8** |
| **ARTICLE 8.** | **GRIEVANCE PROCEDURE** | **Page - 8** |
| **ARTICLE 9.** | **WORKSITE LEADERS** | **Page - 9** |
| **ARTICLE 10.** | **HOLIDAYS** | **Page - 9** |
| **ARTICLE 11.** | **VACATIONS** | **Page - 10** |
| **ARTICLE 12.** | **SICK LEAVE** | **Page - 11** |
| **ARTICLE 13.** | **LEAVE OF ABSENCE** | **Page - 11** |
| **ARTICLE 14.** | **HEALTH AND WELFARE FUND** | **Page - 12** |
| **ARTICLE 15.** | **MANAGEMENT RIGHTS** | **Page - 12** |
| **ARTICLE 16.** | **JOB LOCATION AND BIDDING PROCEDURES** | **Page - 13** |
| **ARTICLE 17.** | **NO STRIKE/NO LOCKOUT** | **Page - 15** |
| **ARTICLE 18.** | **SUCCESSORSHIP** | **Page - 15** |
| **ARTICLE 19.** | **SAVINGS CLAUSE** | **Page - 15** |
| **ARTICLE 20.** | **MOST FAVORED NATIONS** | **Page - 16** |
| **ARTICLE 21.** | **WAGE RATES** | **Page - 16** |
| **ARTICLE 22.** | **SUBURBAN AGREEMENT** | **Page - 17** |
| **ARTICLE 23.** | **MISCELLEANEOUS** | **Page - 18** |
| **ARTICLE 24.** | **PAST PRACTICE** | **Page - 19** |
| **ARTICLE 25.** | **DISCHARGE AND DISCIPLINE** | **Page - 19** |
| **ARTICLE 26.** | **ENTIRE AGREEMENT** | **Page - 19** |
| **ARTICLE 27.** | **SIGNATURES** | **Page - 20** |

## PREAMBLE

This Agreement is made and entered into by and between American Building Maintenance, Elite Maintenance, Kimco Corporation, Lakeside Building Maintenance, The Millard Group, Modern Maintenance, OneSource, Performance Clean, Regency Janitorial Service and Total Maintenance Management hereinafter referred to as "Employer," and SEIU, Local 1, AFL-CIO, hereinafter referred to as "Union."

Whereas, both parties to this Agreement desire to prevent strikes and to facilitate the peaceful adjustment of differences that may arise from time to time, and to promote harmony and efficiency to the end that the employees, the Union, and Employer, and the general public may be mutually benefited, the parties hereto contract and agree in good faith with each other as follows:

## ARTICLE 1- UNION RECOGNITION

**SECTION 1.1 - UNION RECOGNITION:** The Employer recognizes SEIU Local Union 1 [the Union] as the sole collective bargaining representative for all the employees in the Greater Milwaukee Metropolitan area coming under the classifications of this Agreement and within the jurisdiction of the Union.

**Section 1.2** It is mutually agreed that all fill-in workers, floating workers, project workers, and all other non-supervisory employees performing cleaning work within the Downtown jurisdiction shall become and remain members of the Union and shall be covered by this Agreement.

## ARTICLE 2 - NONDISCRIMINATION

**SECTION 2.1 - NONDISCRIMINATION:** No employee or applicant for employment covered by this Agreement shall be discriminated against because of membership or activities in the Union. Neither the Employer nor the Union shall discriminate for or against any employee or applicant for employment covered by this Agreement on account of race, color, religious creed, national origin, age (except as allowed by law), sex, marital status, sexual orientation, physical handicap or veteran status or any other protected class as defined by State or Federal law. It is the policy of the Employer and the Union that the provisions of this Agreement shall be applied to all employees without regard to race, color, religious creed, national origin, age (except as allowed by law), sex, marital status, sexual orientation, physical handicap or veteran status or any other protected class as defined by State or Federal law.

**SECTION 2.2 - USE OF GENDER TERMS:** Employee means all persons covered by this Agreement whether male or female and the use of masculine terms or pronouns shall include the feminine.

## ARTICLE 3 - UNION SECURITY/CHECKOFF

**SECTION 3.1 - UNION SECURITY:** It shall be a condition of employment that all employees of the Employer covered by this Agreement who are members of the Union in good standing on the effective date of this Agreement shall remain members in good standing. It shall be a condition of employment that all employees covered by this Agreement and hired on or after its effective date shall, no later than the thirty-first (31st) calendar day following the beginning of employment or following the effective date of this

Agreement, whichever is later, become and remain members in good standing of the Union. The Employer agrees to provide all new employees with a union check-off authorization form to be completed and sent to the local union office.

**SECTION 3.2 - CHECKOFF:** For purposes of this section, tender of the initiation fees and dues not later than the thirty-first (31st) day following the date of employment or not later than the thirty first (31st) day following the effective date of this Agreement, whichever is later, and tender thereafter of the regular monthly periodic dues uniformly required as a condition of retaining membership shall, for the purposes of this Agreement, constitute membership in good standing in the Local Union.

**SECTION 3.3 - INFORMATION REQUEST:** The Employer agrees within thirty (30) days of the date of hiring to notify the Union of the name(s) and addresses of all new employees.

**SECTION 3.4 - MAINTENANCE OF MEMBERSHIP:** The Employer shall discharge an employee for non-payment of Union initiation fees or dues within ten (10) days after the Employer's receipt of written notice from the Union that such employee is not in good standing. Said notice shall state that the employee has previously been given fifteen (15) days written notice: (a) of the delinquency; (b) the amount and method of computation thereof; (c) that the employee is not in good standing; and (d) that discharge will result at the end of said fifteen (15) day period unless all arrears are paid. The Union will indemnify, defend and hold the Employer harmless against all liability, damages, claims and costs incurred by the Employer, including but not limited to court costs, judgments and attorney fees and expenses, by reason of Employer's compliance with this Section. The Union reserves the right at its option and at its own expense, to appear and defend all such claims whenever suit is brought against the Employer. Employee protests of discharge for alleged non-payment of Union initiation fees or dues will not be subject to the grievance procedure or arbitration.

**SECTION 3.5 - COMMITTEE ON POLITICAL EDUCATION (COPE):** The Employer agrees to deduct and transmit to SEIU COPE all monies deducted per pay period from the wages of those employees who voluntarily authorize such contributions on the forms provided by SEIU Local 1 for that purpose. These transmittals shall occur for each payroll period and shall be accompanied by a list of names of those employees for whom such deductions have been made and the amount deducted for each employee.

## ARTICLE 4 - UNION VISITS

**SECTION 4.1 - UNION REPRESENTATIVE (UNION EMPLOYEE) VISITS:** The Union Representative shall be allowed to visit the building site for the purpose of ascertaining whether or not this Agreement is being observed. This right shall be exercised reasonably. The Union Representative shall call the Employer's main office before proceeding through the building. In the event the Union Representative has a good reason to go to a particular site in the building beyond the Employer's office, he may do so if accompanied by the Employer's or building manager's representatives. The Union Representative shall not interfere with the normal course of work in the building.

## ARTICLE 5 - WORKING CONDITIONS

**SECTION 5.1 - UNIFORMS:** If any employee is required or instructed by the Employer to wear a uniform or any specifically designated article of clothing or footwear (other than standard street shoes, unless the Employer or the worksite require a certain color

or style), the Employer shall provide such apparel, without cost to employees. Open toe shoes, sandals, or house slippers shall not be worn on the job. In buildings where pants and shirts are used, the Employer agrees to provide no less than three (3) sets of such uniforms, as needed; in buildings where smocks are used, the Employer agrees to provide no less than two (2) uniforms, as needed. Employees on their part agree to take good care of such apparel and not wear same except in the course of their duties during working hours, rest periods and at lunchtime. Uniforms shall be replenished as needed by the Employer. If an employee's uniform is damaged while on the job, the Employer will replace the uniform at no cost to the employee.

**SECTION 5.2 - LOCKERS:** Adequate locker space, containing a table and chairs or bench, shall be provided for the employees, subject to availability provided by the building owner.

**SECTION 5.3 - BULLETIN BOARD:** The Employer shall provide a bulletin board at a place designated by the Employer, provided that such space is made available by building management, for the purpose of posting notices of official business of the Union.

**SECTION 5.4 - JOB POSTINGS:** Whenever a vacancy occurs in any job covered by this Agreement, said job shall be posted for a minimum of (four) 4 days in a conspicuous place and all employees may apply for the job. The posting shall contain a full description of the job duties, starting time and rate of pay. Seniority shall be the governing factor in filling the vacancy provided the employee is qualified to perform the job; this is subject to the grievance procedure. For any vacancy not filled pursuant to the foregoing posting procedure, the Employer shall offer the position to a qualified fill-in employee(s) who is/are then working in the Employer's building before hiring new employees to fill the vacancy.

## ARTICLE 6 - SENIORITY

**SECTION 6.1 - LAYOFF AND RECALL:** When decreasing the workforce or reducing hours in a building, or under an Employer, the employment of temporary employees shall be terminated first, then all probationary employees. In the event that there are part time employees in a building, the part-time employees will be laid off prior to permanent full-time employees. The Employer will not implement a reduction in workforce or hours until a plan for the redistribution of the remaining workload has been reached with the Union.

During the probationary period, employees shall have no seniority and may be laid off or terminated at the sole discretion of the Employer and such action shall not be subject to the grievance procedure of this Agreement.

When further layoffs or reduction of hours in a building, or under an Employer, are necessary, the principle of seniority shall prevail, that is, the last hired shall be the first laid off or reduced, the last laid off or reduced shall be the first recalled, provided, that in the remaining workforce there are sufficient employees with the necessary skills and flexibilities needed for an efficient operation. The Employer shall give not less than one (1) week notice of recall to the employees last known address by certified mail. A failure to report for work prior to expiration of such notice period shall result in the loss of all seniority rights under this Agreement. No notice of recall need be given in cases where the Employer and the Union agree to waive notice because it is apparent to them the particular employee will not return. The union stewards shall have super seniority for purposes of lay-offs and recalls.

The Employer agrees to notify the Union of any impending reduction in workforce or hours as soon as possible. The Employer will then make known the reasons for the reductions and establish a plan for the redistribution of the remaining workload. The Employer also agrees to distribute the remaining work evenly over the remaining staff.

## SECTION 6.2 - SENIORITY:

1)    Seniority shall be defined as the anniversary date of employment or at the location of employment, whichever is longer, for all employees covered by this Agreement.

2)    Seniority shall apply to the regular shifts, vacation, and layoffs or reductions in staff, reduction of hours and/or staff, transfers and all job assignments, excluding the promotion to lead positions.

3)    In the event a promotional opportunity (including part-time to full-time work) occurs at the employees' job location, the Employer agrees to post in accordance with the process described in Article 5, Section 4. Given that skill and ability are equal, seniority shall be the determining factor in awarding promotions. Any employee so selected shall be given a reasonable opportunity to perform the duties of the promotional job prior to placing any other employee in that job. This provision does not apply to supervisory/management positions.

4)    Any employee on layoff shall continue to accrue seniority for a period of ninety (90) days.

5)    The Employer will provide the Union with a revised seniority list for each building to the Union every one hundred and twenty (120) days.  Said list will also be posted in each building.

6)    The Employer will provide the Union with a list of new hires and terminations every thirty (30) days.

## SECTION 6.3 TERMINATION OF SENIORITY

Seniority shall cease if an employee:

    1).    Voluntarily quits,
    2).    Is discharged for just cause,
    3).    Is laid off for a period of time that exceeds the length of his service with the company or,
    4).    Any employee absent from work without notice for any three (3) days in any six (6) month period will have their seniority terminated, unless the employee can prove that communication was beyond their control.

An employee's seniority rights shall not be affected by a change of ownership or management of the building so long as said employee remains in the employ of the new owners or managers. The Employer agrees to notify the Union, in writing, promptly upon the consummation of any change in the ownership or management of the building. Seniority shall not be broken except by discharge for just cause or voluntary resignation.

**SECTION 6.4 - OVERTIME:**   Overtime and time beyond normal work hours, holidays, and weekend work shall be shared by rotation as equally as possible within a department. The rotation shall begin with the most senior employee at the

commencement of the contract. The rotation shall always follow the seniority list in sequential order without duplication. If overtime is used for fill-ins, replacement and/or project work, the rotation system shall apply. If an employee is unable to perform project work, this does not eliminate the Employer's responsibility to adhere to the rotation of the overtime system. If an employee is requested to work overtime and refuses to do so, this shall be counted as time worked in the equalization of overtime. Those employees having preference for this extra work should request it. When necessary, employees may be requested to and shall work a reasonable amount of overtime not to exceed sixteen (16) hours per month.

**SECTION 6.5 - PROMOTION TO FULL-TIME:** All full-time positions in the building will be offered to qualified part-time workers before being given to outside applicants. This provision does not apply to supervisory or management positions.

**SECTION 6.6 – VACATION SCHEDULING:** Selection and preference as to the time of taking vacations shall be granted to employees on the basis of seniority, except that a building may depart from seniority in vacation scheduling where it is required in order to maintain normal operations of the building, in which event the Union shall be notified as soon as possible of the departure from seniority.

## ARTICLE 7 - SAFETY

**SECTION 7.1 - SAFETY:** In the event a safety or health hazard is detected, it shall be reported immediately to the Employer and the Union. The Employer, the Union and all employees shall cooperate fully in all efforts to maintain a safe and sanitary workplace.

## ARTICLE 8 - GRIEVANCE PROCEDURE

**SECTION 8.1 - GRIEVANCE PROCEDURE:** In the event that an employee feels that his or her rights under this Agreement have been violated, a grievance may be filed and adjusted in the following manner

1) Before filing a written grievance, the employee must present his/her complaint directly to his/her immediate supervisor within five (5) work days of the alleged contractual violation The immediate supervisor shall have five (5) work days within which to respond in writing.

2) In the event the grievance is not resolved, a written grievance shall be prepared and presented to the account representative within five (5) work days after the immediate supervisor has responded to the grievance. The written grievance shall be adjusted and resolved in writing by the Account Representative or other representative designated by the Branch Manager of Employer within five (5) work days of receipt by him/her of the written grievance.

3) If the matter is not satisfactorily resolved at that level, the grievance may be presented to the Milwaukee Branch Manager who shall give his/her written response within five (5) work days of the receipt by him/her of the grievance.

4) During the steps of the grievance procedure, the aggrieved employee may have the assistance of a Local I Union Representative of their choice.

5) In the event that a grievance is not satisfactorily resolved as set forth herein, and the Union wishes to further pursue it, the charging party has the right to have the

matter arbitrated. If the parties cannot agree upon an impartial arbitrator, the parties shall request the Wisconsin Employment Relations Commission to appoint an arbitrator from its staff.

6) All determinations and awards of an arbitrator hereunder shall be final, conclusive, and binding upon all the parties, executors, administrators, or successors. The arbitrator shall not have the authority to add to, subtract from or alter the provisions of this Agreement.

7) For the purposes of this Article, "work days" shall not include Saturday, Sunday, holidays, or any other non-work day, unless otherwise agreed upon by both parties.

## ARTICLE 9 - WORK SITE

### LEADERS SECTION 9.1 - WORK SITE LEADERS:

1) The Union shall notify the Employer of all designated Union Coordinators and Work Site Leaders, who shall have the right to investigate complaints relating to the terms of this Agreement at their regular job location on the Employer's time. Work Site Leaders, when possible, shall report all work related problems to and work directly with the Union Coordinator. For purposes of layoff and recall, Union Coordinators and Work Site Leaders shall have super seniority in their work location and shall be the last worker laid off and the first recalled. Union Coordinators and Work Site Leaders shall be granted two (2) days off with pay per year to attend Work Site Leader training classes. There shall be no retaliation against Union Coordinators and Work Site Leaders for Union activity.

2) In August of every calendar year, the Union will provide the Employer a list of Union Coordinators and Work Site Leaders eligible to be granted two (2) days off with pay to attend Work Site Leader training classes. If a particular building does not have the appropriate number of Union Coordinators or Work Site Leaders at this time, additional names may be submitted during the calendar year. If a building has the appropriate number of Union Coordinators and Work Site Leaders and they are replaced during the calendar year, a new Union Coordinator or Work Site Leader will not be granted two (2) days with pay to attend Work Site Leader training classes in that calendar year.

3) For the purposes of determining who is eligible for the two (2) days with pay per year for Work Site Leader training classes only, the Union agrees that there will be one (1) Union Coordinator per building and one (1) Work Site Leader per building entitled to this benefit. The Employer has no authority to determine how many Union Coordinators and Work Site Leaders are in each building.

4). Effective August 1, 2004, there shall be three (3) days off with pay.

## ARTICLE 10 -HOLIDAYS

**SECTION 10.1: PAID HOLIDAYS:** All employees will receive seven (7) paid holidays. Holidays include: New Year's Day, Dr. Martin Luther King, Jr.'s Birthday, Memorial Day, July 4th, Labor Day, Thanksgiving Day, and Christmas Day.

**SECTION 10.2: HOLIDAY PAY:** The compensation for the above-mentioned holidays shall be a regular days pay. Employees who are required to work on any of the above

holidays shall be paid at the rate of one and one-half (1½) times their rate of pay, in addition to said holiday pay. To be eligible for holiday pay, the employee must work the scheduled work day before and after the holiday. This policy will be waived with a written doctor's excuse or if employee has a scheduled vacation.

**SECTION 10.3: FLOATING HOLIDAY:** All employees may take one (1) floating holiday per year. This floating holiday may be taken on a date mutually agreed upon by the Employer and the employee provided the employee gives at least two (2) weeks advance notice. Seniority shall apply in determining which employees may take which day as their floating holiday. Time taken off for the one (1) floating holiday will be paid as one (1) day's straight time pay.

**SECTION 10.4 - ELIGIBILITY:** All employees become eligible for holiday pay on their thirtieth (30th) day of employment.

## ARTICLE 11- VACATIONS

**SECTION 11.1 - VACATIONS:** Each employee shall receive vacation benefits, with pay, in accordance with the following schedule:

| YEARS OF SERVICE: | WEEKS OF PAID VACATIONS: |
|---|---|
| One (1) | One (1) |
| Two (2) | Two (2) |
| Five (5) | Three (3) |
| Fifteen (15) | Four (4) |

**SECTION 11.2 - VACATION PAY:** Each week of vacation pay shall be equal to the employee's normal weekly earnings at the time the vacation is taken. In the event an employee has not maintained a regular work schedule during the month preceding that in which he receives his vacation, vacation pay shall be based upon the employee's average number of hours worked over the period since his last employment anniversary date.

All employees shall receive their vacation paycheck on the pay date immediately preceding the day on which such employee starts their vacation.

Any employee who quits or whose employment with the Employer terminates, for any reason, shall receive pro-rated vacation benefits, rounded to the nearest month of employment, from that Employer from whom the employment relationship was terminated.

**Section 11.3 ACCRUED -** Vacation rights of employees shall not be affected by a change of ownership or management or cleaning company of a building. Any employee employed by a contractor whose employment is terminated by reason of change of contractor shall be paid out by the exiting contractor for all vacation earned and accrued and will be entitled to full vacation with pay from the new contractor less any vacation pay that many have been received by the employee from the displaced contractor.

## ARTICLE 12 - SICK LEAVE

### SECTION 12.1 - SICK LEAVE:

    a.    Effective August 1, 2003, there shall be two (2) paid sick days per year.
    b.    There will be an additional paid sick day effective August 1, 2004 for a total of three (3) paid sick days per year.
    c.    There will be an additional paid sick day effective August 1, 2005 for a total of four (4) paid sick days per year.

When calling in sick, employees must give notice in accordance with the company's rules and regulations.

**Section 12.2** The Employer shall not require medical approval because of short-term illness or disability up to and including four (4) consecutive working days, provided however, that when an employee is chronically absent, the Employer may require such medical approval with the consent of the union.

## ARTICLE 13 - LEAVE OF ABSENCE

**SECTION 13.1 - PERSONAL LEAVE:** Leaves of absence for personal reasons may be granted to an employee who has completed six (6) months of service. A leave of absence may be granted for up to thirty (30) calendar days.

The employee is responsible for requesting such a leave and obtaining management approval prior to his/her absence. An employee may not accept other employment while on leave and may be terminated for violation of this provision, except where written consent has been obtained from the Employer.

**SECTION 13.2 - DISABILITY:** Leave of absence due to injury, illness or maternity may be granted to an employee who has completed six (6) months of service. An additional leave of absence can be granted on a month-to-month basis to a maximum of three (3) months.

In requesting a leave of absence, the employee must give prompt written notice of disability to the Employer.

The notice will include a doctor's certification, stating the nature of the disability, the date until which the employee may work (if applicable) and the expected date of return to work. If a request for an extension is made, a doctor's certification of continued disability must be submitted for each month that the leave is extended. The Employer agrees to abide by all State and Federal Family and Medical Leave Laws. The employee will not be entitled to economic benefits for the duration of the leave.

Upon return to work from a leave of absence, an employee will be restored to the job previously held, or a comparable job with regard to work and rate of pay.

Failure to notify the facility of availability for work or failure to return to work upon the expiration of a leave *or* continued absence from work because a leave extends beyond the maximum allowed, will be considered a voluntary termination of employment.

**SECTION 13.3 - UNION LEAVE:** Leave of absence for union business or union staff positions may be granted for up to six (6) months. These leaves of absences, and any

extension of the leave will be considered on a case-by-case basis.

**SECTION 13.4 - BEREAVEMENT LEAVE:** The Employer agrees to pay employees covered by this Agreement for necessary absence on account of death in the immediate family up to and including a maximum of three (3) scheduled workdays at straight time. The employee is required to provide proof of death.

The term "immediate family" shall mean: husband, wife, mother, father, son, daughter, sister, brother, grandparent; step-son, step-daughter or grandchild.

The Employer agrees to pay employees covered by this Agreement for necessary absence on account of death of an In-Law up to and including a maximum of two (2) scheduled workdays at straight time. The employee is required to provide proof of death. The term "In-Law" shall mean: mother-in-law and father-in-law.

**SECTION 13.5 - FAMILY AND MEDICAL LEAVE ACT:** The Employer agrees to abide by all State and Federal Family and Medical Leave laws.

### ARTICLE 14 - HEALTH AND WELFARE BENEFITS

1.) The Employer will provide all eligible employees with family prescription drug coverage through the SEIU Health and Welfare Fund. The contribution rate for the Employer will be $58.59 per month (composite).
2). The Employer will provide all eligible employees with family, dental, vision and prescription insurance through SEIU Health and Welfare Fund. The Employer will also provide full single coverage for health insurance through the SEIU Health and Welfare Fund effective August 1, 2003. The combined contribution rate for the health, vision, and dental coverage will be $201.46 per month (composite). Employees may elect to apply this contribution toward family health insurance and pay the remaining cost of the plan.
3). Effective August 1, 2004 the combined contribution rate for the Health, Vision, Dental coverage will be 231.46 per month (composite). Employees may elect to apply this contribution toward family health insurance and pay the remaining cost of the plan.
4). Effective August 1, 2005 the combined contribution rate for the Health, Vision, Dental coverage will be 261.46 per month (composite). Employees may elect to apply this contribution toward family health insurance and pay the remaining cost of the plan.

5) If an employee is regularly scheduled at 30 hours or more per week, they will not be penalized if they miss a day of work. Employees will become eligible for all health and welfare benefits on their ninetieth (90) day of employment

During the term of this Agreement, the Union will investigate a different health insurance plan for the members.

### ARTICLE 15 - MANAGEMENT RIGHTS

**SECTION 15.1 - MANAGEMENT RIGHTS:** The management, direction and control of the operations are and shall remain within the sole discretion of the Employer. This shall include, but not be limited to, the assignment of work, determination of the products to be used, the promulgation of reasonable work standards, work rules and other facilities, the hiring, promotion and the termination of employees for just cause, the curtailment of

all or part of the Employers operation and all other functions formally and the proper function of the Employer, except as limited by the specific clauses of this written Agreement.

The Employer will discuss with the Union the effects of any changes in hours of work and/or changes in work schedules. The Employer will not subcontract in any case where such action would result in job loss to current unit members.

## ARTICLE 16 - JOB LOCATION AND BIDDING PROCEDURE

**SECTION 16.1 - REGISTRATION OF JOB LOCATION:,** The Employer shall furnish the Union, in writing, on a standard form mutually agreed to by the parties, the names and addresses of all jobs, the number of employees on each job, wage rates and hours employed per week. This information shall be submitted to the Union by the Employer within thirty (30) days after the execution of this Agreement, on a standard form approved by the Union. The Employer shall provide a revised list to the Union every one hundred and twenty (120) days.

**SECTION 16.2 - TERMINATION OF EMPLOYER'S SERVICES:**

A)    The Employer shall furnish to the Union, in writing, on a standard form mutually agreed to by the parties, the name and address of any job where the Employer's services are being terminated, together with the number of employees, number of man hours worked per day and per week, starting and quitting time of each employee and the wage rate of each employee at the job location.

B)    The above information shall be submitted to the Union in the required form at least two (2) weeks prior to the date the Employer's services are to be terminated. Should the Employer's services be terminated by a building owner without notice, this clause will be waived.

**SECTION 16.3 - NEW JOBS:** The Employer shall notify the Union, in writing, on a standard form approved by the Union, of the name and address of any new job he/she obtain, within five (5) days of his/her acquisition of such job. Such notice shall include the number of employees to be used on the job, and wage rates and hours employed. The Employer will provide changes to the union as they occur.

**SECTION 16.4 - SALE OR TRANSFER OF BUSINESS OR JOBS:** In the event the Employer purchases, sells or transfers his/her business or any job location or accounts, he/she shall notify the Union in writing of the names and addresses of any jobs purchased, sold or transferred and the names of the employees employed at such job-locations or accounts. This provision only applies to accounts and the geographical area covered by this agreement.

**SECTION 16.5 - JOB RE-BIDDING INFORMATION:** The Employer shall provide in writing, on a standard form approved by the Union, the following information for any job location covered by this Agreement within forty-eight (48) hours upon receipt of a request from the Union:

1)    The number of employees and the name of each employee,
2)    Number of hours worked per day, and per week,
3)    Starting and quitting times of each employee,
4)    The wage rate of each employee,
5)    The original hiring date of each employee with the Employer,

other Employers or at the job location, whichever is earlier (if information is attainable).

The Union agrees that it will designate an authorized person(s) to request the stated information.

Upon receipt of such information, the Union will treat the information on a confidential basis and will release it to another Employer in accordance with this Article, only when it has been determined that bona fide bids are being requested.

**SECTION 16.6 - JOB RE-BIDDING PROCEDURE:** Whenever the Employer bids or takes over the servicing of any job location where the present employees are working under the terms of a collective bargaining agreement to which Local 1 of the Service Employees International Union is signatory, the Employer agrees to do the following:

1) Contact the Union for the number of employees, number of hours worked per day and per week, starting and quitting time of each employee and the wage rate of each employee at the job locations.

2) Observe all of the existing conditions at the job location and, specifically, employ all existing employees, not reduce the wage rate of any employee, the number of employees, the total number of hours worked per day and per week, not change the starting or quitting time of any employee.

3) Any deviation to this procedure is only allowable if there is a change in the building's contract specifications and/or occupancy rate. Such change in specification and/or occupancy rate must be confirmed by the union.

**SECTION 16.7 - CHANGE OF EMPLOYER:**

1) The Employer shall not enter into an agreement, written or verbal, direct or indirect, that will prohibit or limit in any manner, any person's or company's right to hire the employees of the Employer, or the right of any employee to accept any such employment following the termination of the services of the Employer at any job location, building or establishment.

2) In the event of any change of Employer at any job location, the original date of hire of each employee at the job location or of any other employment with the displaced Employer or Employers, in the event of more than one change of Employer, shall constitute the beginning of the seniority of such employee and shall apply to all benefits set forth in this Agreement.

3) In the event of a change of Employer at a job location, the Employer which is actually providing service on the date of the holiday, will be liable for holiday benefits.

**ARTICLE 17 - NO STRIKE/NO LOCKOUT**

**SECTION 17.1 - NO STRIKE/NO LOCKOUT**: During the term of this Agreement, neither the Union nor any employee shall engage in any manner, encourage or sanction any strike, slowdown, delay, cessation or interruption of work. The Employer agrees not to lockout employees during the term of this agreement.

The Union agrees that in the event an unauthorized strike, picketing, slowdown or other work stoppage occurs, it will immediately notify the employees involved to immediately return to work. If the Union takes such action, the Employer agrees that it will not seek to have the Union held liable for damages on account of the strike, picketing, slowdown or other stoppage of work which is unauthorized by the Union.

Refusal of any employees to cross a picket line established or maintained by a recognized labor organization shall not be grounds for discharge or disciplinary action.

## ARTICLE 18 – SUCCESSORSHIP

**SECTION 18.1 – SUCCESSOR COMPANIES/UNION MERGER**

1) The parties agree that in the event that the ownership or management of any plant or company is changed by sale, merger, or in any other manner, this Agreement shall be included as a condition of such change or transfer, and shall run to its conclusion as the contract of the successor company, applicable to the particular plant thus sold, merged or transferred. The Union likewise binds itself to hold this contract in force to its termination, and agrees that no part of this Agreement shall be assigned to any labor organization other than those which are parties hereto, without the consent of the parties hereto.

2) This agreement shall be fully binding upon the Employer regardless of a change in entity, name, association or joint venture.

3) In the event the Employer or any person owning an interest in the business of the Employer including ownership of stock if the Employer is a corporate entity, owns, acquires or creates another entity including a sole proprietor, partnership, joint venture or corporation and such other entity performs work and hires employees under the classifications of this Agreement, then such other entity shall be fully bound and liable for each term and provision of this Agreement to the same extent as though such other entity is signatory to this Agreement. In addition, if such individual or Employer owns an interest in such other entity, including stock ownership, and such individual or Employer has an interest including stock ownership in the business of the Employer signatory to this Agreement, such individual or Employer shall be personally bound and liable to all the terms, conditions and benefits of this Agreement.

## ARTICLE 19 - SAVINGS CLAUSE

**SECTION 19.1 - SAVINGS CLAUSE:** In any provision of this contract or the application of such provision to any person or circumstances be ruled an "unfair labor practice," or in any other way contrary to law, by any federal or state court or duly authorized agency, the remainder of this contract or the application of such provision to other persons or circumstances shall not be affected thereby.

## ARTICLE 20 - MOST FAVORED NATIONS

**SECTION 20.1 - MOST FAVORED NATIONS:** In the event that the union enters into any agreements after the effective date of this Agreement, with any other contractors in the maintenance industry, effecting employees within the geographic scope of this Agreement, that contain economic terms more favorable to the Employer, then the Employer shall have the right to benefit from those terms.

**SECTION 20.2 - EXISTING BENEFITS:** Any job location providing greater holidays or vacations that exist in this Agreement, the Employer shall continue to provide those additional benefits for the life of this Agreement, pertaining to the buildings listed under the Memorandum of Agreement.

## ARTICLE 21- DOWNTOWN

**SECTION 21.1 - DOWNTOWN JURISDICTION:** The Employer agrees that any new accounts that it obtains in the downtown area will be subject to the terms of the collective bargaining agreement. Boundaries include both sides of the street. The downtown area is defined as:

East – Lake Michigan
West – Hwy 41
South – Lincoln Avenue
North – North Avenue


**SECTION 21.2 - WAGE RATES:**

1.  Effective August 1, 2003, each employee hired before that date shall receive a wage increase of $.25 cents per hour, or the cleaner wage rate of $8.75 per hour, whichever results in the greater wage increase.

    Effective August 1, 2003, each employee hired after that date shall receive an hourly wage rate of $8.00 for the first thirty (30) days of employment; an hourly wage rate of $8.35 for the next thirty (30) days of employment; and an hourly wage rate of $8.75 thereafter.

2.  Effective August 1, 2004, each employee hired before that date shall receive a wage increase of $.35 cents per hour, or the cleaner wage rate of $9.10 per hour, whichever results in the greater increase.

    Effective August 1, 2004, each employee hired after that date shall receive an hourly wage rate of $8.35 for the first thirty (30) days of employment; an hourly wage rate of $8.70 for the next thirty (30) days of employment; and an hourly wage rate of $9.10 thereafter.

3.  Effective August 1, 2005, each employee hired before that date shall receive a wage increase of $.35 cents per hour, or the cleaner wage rate of $9.45 per hour, whichever results in the greater wage increase.

    Effective August 1, 2005, each employee hired after that date shall receive an hourly wage rate of $8.70 for the first thirty (30) days of

employment; an hourly wage rate of $9.05 the next thirty (30) days of employment; and an hourly wage rate of $9.45 thereafter.

4.      Employees who, as of the above effective dates, were receiving pay rates in excess of those provided by the previous agreement between the parties or this Agreement shall be entitled to receive the full amount of the hourly increases included in the above rates.

**SECTION 21.3 - LONGEVITY BONUS:** After twenty (20) years of service, employees will receive a $.25 per hour bonus in addition to their current rate of pay for each year of the contract and after twenty-five (25) years, $.30 cents per hour bonus in addition to their current rate of pay each year of the contract.

**SECTION 21.4 - OVERTIME:** Employees will be paid one and one-half (1-1/2) times their hourly rate of pay for all hours worked after eight (8) hours a day or after forty (40) hours a week.

## ARTICLE 22 - SUBURBAN AGREEMENT

**SECTION 22.1 - SUBURBAN AGREEMENTS:**

1)      For purposes of this memorandum of agreement, the Employer and Local 1 agree to distinct geographic areas defined as follows:

NORTH:      East - 12th Street from 1-94 to North Avenue; Lake Michigan from North Avenue

West -92nd Street

South-From 92nd Street east along 1-94 to 12th Street, then north to North Avenue and east to Lake Michigan along North Avenue

North -Milwaukee County Line

WEST #1:      East - 92nd Street
West - Moorland Road
South - 1-94
North -Milwaukee County Line

WEST #2:      East - Moorland Road
West - Highway 83 South -1-94
North - Milwaukee County Line

SOUTH #1:      East - Lake Michigan
West - Waukesha/ Milwaukee County Line
South -Milwaukee County Line North - 1-794/1-94

SOUTH #2:      East - Waukesha/Milwaukee
County Line West - Highway 83
South -Milwaukee/Racine County
Line North -1-94

2)    At such time as SEIU Local 1 signs a major contractor to a collective bargaining agreement, or that fifty percent of commercial office buildings of at least 50,000 square feet of an individual area's market is cleaned by Employers bound or signatory to a collective bargaining agreement, whichever occurs first, the Employer agrees that the recognition procedure set forth in the Union Neutrality Clause as defined in the Addendum will apply in that area (or areas). In determining whether the fifty percent figure, has been reached, the Employer's work will be counted as work cleaned by a signatory contractor.

3    Upon the union's demonstration of majority support in any individual area defined above, all terms and conditions of the collective bargaining agreement will be subject to the bargaining process.

.

## ARTICLE 23 – MISCELLEANEOUS

No employee shall be required to perform any work under abnormally dangerous conditions, and a failure to perform work under such circumstances, shall not be considered a cause for discharge or discipline.

It is agreed that janitorial personnel will perform all traditional work, which consists of general cleaning in and around the buildings.

**Section 2**: (a) There shall be a premium of fifty cents ($.50) cents per hour paid when the following work is performed.

> High Level work – 12 feet and over from floor level unless a hydraulic lift is used, then up to 18 feet
> Furniture crating and uncrating
> Removal of tile affixed to floor
> Moving and storing of construction equipment and material
> Exterior metal refinishing-after one hour in one day-from first hour of work
> Loading and unloading of trucks and dock labor-after two hours in one day-from first hour of work
> Moving furniture=after two hours in one day-from first hour of work
> Heavy cleanup in connection with construction, painting and repair
> Cleaning Venetian blinds (other than dusting)
> Removal of old carpeting

> (b) When employees are required to do demolition, they shall be paid at the rate equal to one one-half (1 ½) times the regular hourly rate.  When employees are required to do either site clean-ups or initial clean-ups, the employee shall be paid their regular rate of pay unless they have exceeded the amount of hours to be paid overtime.

> (c)  Where an employee performs work described by this section for twenty (20) minutes or less per day, there shall be no adjustment in pay.  Except as specifically provided herein, employees who perform work described by this Section for more than twenty (20) minutes in a day, shall be guaranteed appropriate pay therefore for a minimum of two (2) hours.  No reassignment or change in duties being performed can be made for the purpose of downgrading and employee.

**Section 3 – Pay Period**; Employees shall be paid at their job location
**Section 4 – Call In Pay**; An employee not scheduled to work on a Saturday or Sunday who is called in to work shall be given at least four (4) hours of work or pay.

## ARTICLE 24 – PAST PRACTICE

Although this Agreement states essential provisions covering wages, hours and working conditions applicable to all covered employees and buildings (Employers), it does not state each privilege, rule of the shop or working condition which employees in a particular building (employer) have enjoyed under the prior agreement or the particular working conditions actually in effect in each such building (employer).  The current Employer shall not use this Agreement as a reason for reducing or eliminating a beneficial working condition, rule of the shop of privilege.

## ARTICLE 25 – DISCHARGE AND DISCIPLINE

**SECTION 1.**   Except as otherwise provided by this Agreement, no employee may be discharged, suspended, disciplined or otherwise penalized without just cause. The Employer agrees that all discipline should be progressive, absent compelling circumstances warranting immediate termination or acceleration of disciplinary penalties.

**SECTION 2**.   In cases where the Employer believes that an employee's job performance has become unsatisfactory, such as when an employee is believed to be careless or excessively absent or tardy, the Employer will notify the Union, in writing, of such belief and the Union and the Employer shall cooperate in investigating the matters and taking corrective measures, if warranted.  If the Employer contemplates severe disciplinary action beyond a reprimand, then the Employer will notify the Union in writing of such belief and the Union will promptly acknowledge, in writing, receipt of such notice. The Union need not acknowledge receipt of simple warnings or reprimands in which the Employer does not state that severe disciplinary action is contemplated.  No warnings or reprimands shall be considered for purposes of disciplinary action after (18) eighteen months from the date of the warning or reprimand.

## ARTICLE 26 - ENTIRE AGREEMENT:

This Agreement becomes effective August 1, 2003 and shall remain in full force and effect through July 31, 2006.  For its duration, the parties hereto waive further collective bargaining on all appropriate subjects of bargaining, whether or not mentioned herein, except that this Agreement may be reopened for the limited purpose of making such changes as are required by the Employee Retirement Income Security Act as subsequently construed by courts or appropriate governmental agencies.

# EXHIBIT 2



LOCAL 1
SEIU
Stronger Together

THOMAS BALANOFF
President

CHRIS ANDERSEN
Secretary-Treasurer

VICE PRESIDENTS
MARIA GRACIELA BARRERA
RODERICK S. BASHIR
AIRRINE M. CASTLE
NANCY E. CROSS
DAN IVERSON
KAZIMIERZ LUPA
VINCE PESHA

PATRICIA ARROYO
Recording Secretary

SERVICE EMPLOYEES
INTERNATIONAL UNION
AFL-CIO, CLC

250 E. Wisconsin Ave.
Suite 1275
Milwaukee, WI 53202
414.223.0090
Fax: 414.223.0094

Main Office
111 East Wacker
Suite 2500
Chicago, IL 60601
312.240.1600
Fax: 312.233.8849



This is to recognize that Skyline Building Services, Inc. is a signator to the Collective Bargaining Agreement between Service Employees International Union Local 1 and the Milwaukee Janitorial Contractors (Downtown Master Agreement).

This contract is dated August 1, 2003 and expires on July 31, 2006. Skyline Building Services, Inc. agrees to abide by all the conditions set forth and herein.

**SKYLINE BUILDING SERVICES, INC.**

Frank Vaia, Sr. Vice President
Skyline Building Services, Inc.

9/12/05
**DATE**

**SERVICE EMPLOYEES INTERNATIONAL UNION, LOCAL 1**

Dan Iverson, Vice President
SEIU Local 1 – WI Division

September 12-05
**DATE**

# EXHIBIT 3

RESTATED AGREEMENT AND DECLARATION OF TRUST

SERVICE EMPLOYEES INTERNATIONAL UNION
HEALTH AND WELFARE FUND

# TABLE OF CONTENTS

Page

ARTICLE I: DECLARATION OF TRUST ........................... 1

1. NAME ................................................. 1
2. PURPOSE .............................................. 2
3. TERM OF TRUST AGREEMENT .............................. 2

ARTICLE II: DEFINITIONS .................................... 2

1. "HEALTH AND WELFARE PLAN" or "PLAN" .................. 2
2. "COLLECTIVE BARGAINING AGREEMENT" .................... 3
3. "THE UNION" .......................................... 3
4. "CONTRIBUTIONS" ...................................... 3
5. "PARTICIPATING EMPLOYEE" ............................. 3
6. "BENEFICIARY"........................................ 3
7. "BENEFIT PROGRAM"..................................... 4
8. "PARTICIPATING EMPLOYER".............................. 4
9. "PARTICIPATING EMPLOYER ASSOCIATION".................. 4
10. "PARTICIPATNG LABOR ORGANIZATIONS" OR "LABOR
    ORGANIZATIONS"....................................... 4
11. "SIGNATORY PARTIES".................................. 4
12. "SPECIAL AGREEMENT".................................. 4
13. "SUBSCRIPTION AGREEMENT" ............................ 5
14. "TRUSTEES" OR "BOARD OF TRUSTEES..................... 5
15. "TRUST" OR "TRUST FUND" OR "FUND".................... 5
16. "ADMINISTRATOR"...................................... 5
17. "WELFARE BENEFITS".................................... 5

ARTICLE III: THE TRUSTEES ................................... 6

1. THE BOARD OF TRUSTEES ................................ 6
2. STATUTORY CAPACITIES OF TRUSTEES ..................... 6
3. AGENTS FOR SERVICE OF PROCESS ........................ 6
4. NUMBER OF TRUSTEES ................................... 7
5. TERMS OF TRUSTEES .................................... 7
6. APPOINTMENT OF SUCCESSOR EMPLOYER TRUSTEES .......... 8
7. APPOINTMENT OF SUCCESSOR UNION TRUSTEES ............. 8
8. INDIVIDUALS DISQUALIFIED FROM SERVING
   AS TRUSTEES ......................................... 8
9. ACCEPTANCE OF APPOINTMENT BY TRUSTEES ............... 9
10. TERMINATION OF APPOINTMENT BY
    APPOINTING-ENTITY ................................... 9
11. TERMINATION OF APPOINTMENT FOR FAILURE TO
    ATTEND MEETINGS ..................................... 9
12. TERMINATION OF APPOINTMENT FOR CONVICTION
    OF A CRIME .......................................... 10
13. TERMINATION OF APPOINTMENT FOR MENTAL
    INCAPACITY .......................................... 10
14. RESIGNATION OF APPOINTMENT .......................... 10

Page

15. VACANCIES ....................................................... 10
16. RETURN OF BOOKS AND RECORDS ...................... 10

ARTICLE IV:  ADMINISTRATION OF THE FUND ..................... 11

1. MANNER OF VOTING ......................................... 11
2. CONSTITUTION OF A QUORUM ............................ 11
3. MOTIONS ....................................................... 11
4. REGULAR MEETINGS ........................................ 12
5. SPECIAL MEETINGS .......................................... 12
6. ACTION WITHOUT A FORMAL MEETING ............... 12
7. ARBITRATION OF DEADLOCKED ISSUES ............... 13
8. ELECTION OF CHAIRMAN AND SECRETARY ........... 14
9. DUTIES OF CHAIRMAN AND SECRETARY ............... 14
10. AUTHORIZED SIGNATURES ................................. 15
11. COMPENSATION AND EXPENSES .......................... 16
12. BENEFITS TO TRUSTEES NOT PROHIBITED ........... 16

ARTICLE V:  PARTICIPATION ......................................... 16

1. EMPLOYEES & EMPLOYERS ENTITLED TO PARTICIPATE ...... 16
2. BARGAINING UNITS ENTITLED TO PARTICIPATE ............. 17
3. OTHER BARGAINING UNITS ................................. 18
4. NON-BARGAINING UNIT EMPLOYEES OF
    PARTICIPATING EMPLOYERS............................... 18
5. STAFF EMPLOYEES OF PARTICIPATING
    LABOR ORGANIZATIONS.................................... 19
6. STAFF EMPLOYEES OF PARTICIPATING
    EMPOYER ASSOCIATIONS................................... 19
7. TRUST FUND EMPLOYEES................................... 20
8. UNAUTHORIZED PARTICIPATION;
    NO WAIVER BY TRUSTEES.................................. 20

ARTICLE VI:  TRUSTEE RESPONSIBILITIES ......................... 21

1. GENERAL DUTY - RECEIPT OF CONTRIBUTIONS AND
    CREATION AND ADMINISTRATION OF PLAN ............ 21
2. COMPLIANCE WITH THE INTERNAL REVENUE CODE ..... 21
3. BASIS OF PAYMENTS TO AND FROM TRUST FUND ...... 21
4. APPLICATION OF TRUST FUND ASSETS .................. 22
5. FIDUCIARY STANDARDS ................................... 22
6. DEPOSITS .................................................... 22
7. INVESTMENTS .............................................. 23
8. SPECIFICALLY PERMITTED INVESTMENTS .............. 23
9. TITLE TO INVESTMENTS AND OTHER ASSETS ......... 24
10. FIDELITY BOND ........................................... 25
11. RECORDS ................................................... 25
12. ANNUAL AUDIT ........................................... 26

-ii-

Page

13. PLAN DESCRIPTION ................................. 26
14. ANNUAL REPORT .................................... 26
15. DOCUMENTS TO BE EXAMINED OR FURNISHED ........... 27
16. PROCEDURE FOR ESTABLISHING FUNDING POLICY ....... 28

ARTICLE VII:   TRUSTEE POWERS ............................. 28

1. GENERAL POWER ................................... 28
2. SPECIFIC POWERS OF DISCRETIONARY ................ 29
3. AMENDMENT OF PLAN ............................... 29
4. DESIGN OF THE PLAN .............................. 29
5. CREATION OF BENEFIT PLAN......................... 30
6. ADDITIONAL BENEFIT PLANS AND PROGRAMS............ 30
7. MEANS OF PROVIDING BENEFITS...................... 31
8. FACILITY OF PAYMENT.............................. 31
9. SELF-PAYMENTS BY EMPLOYEES....................... 31
10. AN ADMINISTRATIVE AGENT OR ADMINISTRATOR......... 32
11. BANKING SERVICES................................. 32
12. OTHER PROFESSIONAL AND NON-PROFESSIONAL HELP..... 33
13. OBTAINING OF NECESSARY PREMISES,
      EQUIPMENT, AND SUPPLIES........................ 33
14. INSURANCE........................................ 33
15. BORROWING MONEY.................................. 34
16. RESERVE FUNDS.................................... 34
17. PAYMENTS OF TAXES................................ 35
18. REFUNDS OF CONTRIBUTIONS ERRONEOUSLY PAID........ 35
19. PROSECUTION OF LEGAL ACTIONS OR CLAIMS........... 35
20. DEFENSE OF LEGAL ACTIONS AND CLAIMS.............. 36
21. COMPROMISE OF LEGAL ACTIONS OR CLAIMS............ 36
22. PENALTIES FOR FALSE OR WITHHELD INFORMATION...... 37
23. CORRECTION OF ERRORS............................. 37
24. SUBSCRIPTION AGREEMENTS.......................... 38
25. PARTICIPATION IN NON-PROFIT  EDUCATIONAL
      ORGANIZATIONS.................................. 38
26. RECIPROCITY...................................... 38
27. COORDINATED ADMINISTRATION....................... 39
28. MERGERS.......................................... 39
29. INTERPRETATION AND APPLICATION OF DOCUMENTS...... 40

ARTICLE VIII:   ALLOCATION OR DELEGATION OF TRUSTEE
                RESPONSIBILITIES ......................... 40

1. ALLOCATION OF RESPONSIBILITIES TO COMMITTEES .... 40
2. DELEGATION OF INVESTMENT RESPONSIBILITIES ....... 42
3. DELEGATION OF OTHER RESPONSIBILITIES ............ 42
4. REVIEW OF PERFORMANCE ........................... 43

ARTICLE IX:   CONTRIBUTIONS AND COLLECTIONS ............... 43

1. CONTRIBUTION REPORTING FORMS .................... 43

-iii-

Page

2. CONTRIBUTION DUE DATE ......................    43
3. DELINQUENT CONTRIBUTIONS ..................    44
4. AUDIT OF EMPLOYER BOOKS AND RECORDS .......    44
5. LIQUIDATED DAMAGES AND INTEREST ...........    45
6. ATTORNEY FEES AND COURT COSTS .............    46
7. VENUE OF COLLECTION ACTIONS ...............    46
8. PROTECTION OF EMPLOYEES IN CASES OF DELINQUENCY ....    47
9. COORDINATION WITH PROVISIONS IN COLLECTIVE    47
    BARGAINING AGREEMENTS .....................    48

ARTICLE X:  HEARING AND ARBITRATION PROCEDURES ............    48

1. PROCEDURES TO BE FOLLOWED .................    48
2. HEARINGS BEFORE BOARD OF TRUSTEES .........    49

ARTICLE XI:  LIMITATIONS ...........................    49

1. LIABILITIES AND DEBTS OF TRUST FUND .......    49
2. LIABILITIES AND DEBTS OF PARTICIPATING PARTIES .....    49
3. PERSONAL LIABILITIES OF TRUSTEES ..........    50
4. JUDGMENTS AGAINST TRUST FUND ..............    50
5. PARTICIPATING PARTIES' RIGHTS .............    51
6. CESSATION OF PARTICIPATION ................    51
7. PROTECTION OF TRUST FUND, CONTRIBUTIONS, AND    51
    BENEFITS ..................................    52
8. RELIANCE UPON WRITTEN DOCUMENTS ...........    52
9. AGENTS OF TRUST FUND ......................    52

ARTICLE XII:  MISCELLANEOUS ........................    52

1. TRUST FUND OFFICES ........................    53
2. APPLICABLE LAWS AND REGULATIONS ...........    53
3. SERVICE IN MORE THAN ONE FIDUCIARY CAPACITY ........    53
4. NOTICES ...................................    54
5. SEVERABILITY ..............................    54
6. TITLES AND WORDS ..........................    54

ARTICLE XIII:  AMENDMENTS AND TERMINATIONS ................    54

1. AMENDMENTS ................................    54
2. TERMINATION ...............................    55
3. ALLOCATION UPON TERMINATION ...............    56

SIGNATORY PARTIES ..................................

SERVICE EMPLOYEES INTERNATIONAL UNION
HEALTH AND WELFARE FUND

Restated Agreement and Declaration of Trust

INTRODUCTION

Whereas, the signatory Trustees (or their predecessors in interest) did, by trust agreement executed on May 1, 1969, and amended on October 6, 1976 and October 11, 1983, establish and maintain a joint labor-management employee welfare benefit trust fund known as the Service Employees International Union Local 82 Labor Management Medical Trust Fund, and

Whereas, the Trustees have also determined to revise and restate the existing trust instrument, as amended, to take into account contemporary needs and conditions,

Now, therefore, the signatory parties, the Trustees, do hereby review and restate the existing trust instrument as set forth in the following pages.

ARTICLE I

1.  NAME

The Trustees hereby declare that the Trust Fund as previously established and maintained by them shall be known as the Service Employees International Union Health and Welfare Fund.  The Trustees may hold property, enter into contracts and in all matters act in behalf of the Trust Fund in such name. The Trust Fund may sue or be sued in such name.

2.    PURPOSE

The purpose of the Trust Fund is to provide an entity to which contributions from participating employers and contributions from participating employees (if any) can be paid and through which the Trustees can administer one or more employee welfare benefit plans and/or programs for the participating employees on whose behalf the contributions have been paid and their beneficiaries.  The Trustees shall administer the Trust Fund for the exclusive purpose of providing benefits to participants and their beneficiaries as decided by the Trustees, and shall further provide the means for defraying reasonable expenses of administering and operating the Plan in accordance with this Trust Agreement.

3.    TERM OF TRUST AGREEMENT

This Trust Agreement shall be effective as of February 27, 1989, and shall continue indefinitely until such time as it may be terminated in accordance with the provisions of Article XIII hereof.

ARTICLE II

DEFINITIONS

The following definitions shall govern in this Trust Agreement:

1.    "HEALTH AND WELFARE PLAN" or "PLAN" -- this Restated Agreement and Declaration of Trust or the entire Health and

Welfare Plan arrangement including the benefit programs and other provisions set forth in the Plan documents, depending upon context.

2.    "COLLECTIVE BARGAINING AGREEMENT" -- a written agreement between a participating employer and the Union and any supplement, amendment, continuation, or renewal thereof, by the terms of which the employer is obligated to make contributions to the Fund.

3.    "THE UNION" -- the Service Employees International Union, AFL-CIO, CLC and its affiliated Local Unions.

4.    "CONTRIBUTIONS" -- the payments required of a participating employer, or of a participating employee (if any), pursuant to the terms of a collective bargaining agreement or special agreement, for the purpose of providing health and welfare benefits to the employees covered by said agreements and their beneficiaries; also the self-payments made by participating employees pursuant to any self-payment rules adopted by the Trustees.

5.    "PARTICIPATING EMPLOYEE" -- any individual employed by a participating employer who is covered by a collective bargaining agreement, or special agreement, and for whom an employer makes contributions to the Fund and any individual who may have been so employed but is subsequently laid off, terminated, or retired.

6.    "BENEFICIARY" -- Any dependent of a PARTICIPATING EMPLOYEE, who is entitled to benefits, as defined in the Plan;

- 3 -

and any person designated by a participating employee or dependent, or by the terms of the Plan, to receive benefits upon the death of such participating employee or dependent.

7.  "BENEFIT PROGRAM" -- One of the three benefit arrangements which form the Plan and which are administered by the Trustees and for which Trust Fund assets are used to pay benefits.

8.  "PARTICIPATING EMPLOYER" -- any sole proprietorship, partnership, unincorporated association, corporation, or joint venture that is party to a collective bargaining agreement with the Union and that satisfies the requirements of Article V hereof.

9.  "PARTICIPATING EMPLOYER ASSOCIATION" -- any employer association that is party to a collective bargaining agreement and that satisfies the requirements of Article V hereof.

10.  "PARTICIPATING LABOR ORGANIZATIONS" OR " LABOR ORGANIZATION" -- labor organizations or organizations that represent employees in collective bargaining with employers and that satisfy the requirements of Article V hereof.

11.  "SIGNATORY PARTIES" -- the parties who have created this Trust Agreement and whose signatures appear on the last page hereof (or their successors).

12.  "SPECIAL AGREEMENT" -- a written agreement between a participating employer and the Trustees, and any supplement, amendment, continuation, or renewal thereof, that obligates the employer to make contributions to the Fund for the purpose of

providing health and welfare benefits to the employees covered by the said agreement.

13.    "SUBSCRIPTION AGREEMENT" -- a written agreement by which a participating employer acknowledges its obligation to make contributions to the Trust Fund and subscribes to the terms and provisions of this Trust Agreement.

14.    "TRUSTEES" OR "BOARD OF TRUSTEES" -- the Trustees of the fund and their successors. "Employer-appointed Trustees" shall mean the Trustees appointed by the Employer in accordance with this Agreement and Declaration and the collective bargaining agreement. "Union-appointed Trustees" shall mean Trustees appointed by the Union in accordance with this Agreement and Declaration. "Trustees" shall mean the Employer-appointed Trustees and Union-appointed Trustees collectively.

15.    "TRUST" OR "TRUST FUND" OR "FUND" -- the entity created by this Trust Agreement, and all property and money held by such entity, including all contract rights and records.

16.    "ADMINISTRATOR" -- the person, persons or entity retained by the Trustees to act as the administrative agent for the Fund and Plan.

17.    "WELFARE BENEFITS" OR "EMPLOYEE WELFARE BENEFITS" -- the benefits provided under the Plan.

- 5 -

ARTICLE III

THE TRUSTEES

1.   THE BOARD OF TRUSTEES

The Health and Welfare Trust and the Health and Welfare Plan shall be administered by a Board of Trustees composed of equal numbers of Employer-appointed Trustees and Union-appointed Trustees.  The Trustees currently are:

<table>
<tr><td>For the Union</td><td>For the Employer</td></tr>
<tr><td>John J. Sweeney</td><td>Jerry Davis</td></tr>
<tr><td>Arline M. Neal</td><td>Clement Hipple</td></tr>
<tr><td>Richard W. Cordtz</td><td>Louis Brady</td></tr>
<tr><td>Mary Martin</td><td>David Tolson</td></tr>
</table>

2.   STATUTORY CAPACITIES OF TRUSTEES

For purposes of complying with Section 302(c)(5)(B) of the Labor Management Relations Act of 1947, the participating employers shall be represented, in the administration of the Fund, by the Employer-appointed Trustees; and the participating employees  shall be represented by the Union-appointed Trustees.

For purposes of complying with the various provisions of the Employee Retirement Income Security Act of 1974, the Trustees  shall be considered as "named fiduciaries," "fiduciaries," the "plan administrator," and the "plan sponsor," as those terms are used in the Act.

3.   AGENTS FOR SERVICE OF PROCESS

Each Trustee shall be considered as an agent of the Trust Fund for the purpose of accepting service of legal process,

- 6 -

provided that the Trustees may designate their administrative agent, or another person, as agent of the Trust Fund for this purpose.

## 4. NUMBER OF TRUSTEES

The number of Trustees shall be as follows:

(a)  four trustees appointed by the Service Employees International Union, AFL-CIO, CLC; and

(b)  four trustees appointed by representatives of the participating employer or employers.

The number of Alternate Trustees, who shall serve in the event that one or more of the Trustees is not able to attend a trustees' meeting or otherwise serve, shall be as follows:

(a)  one Alternate Trustee shall be appointed by the Service Employees International Union, AFL-CIO; and

(b)  one Alternate Trustee shall be appointed by representatives of the participating employer or employers.

When serving in lieu of a regular Trustee, an Alternate Trustee shall exercise all of the powers and shall be subject to the responsibilities and obligations of a regular Trustee.

## 5. TERMS OF TRUSTEES

The term of Employer Trustees and Alternate Employer Trustees shall be three years.  Union Trustees and Alternate Union Trustees shall serve until removed as Trustees by the Service Employees International Union or until resignation or

- 7 -

death.

6.    APPOINTMENT OF SUCCESSOR EMPLOYER TRUSTEES

a.    In the event of the termination of appointment, resignation, or death of an Employer Trustee or Alternate Employer Trustee, a successor Employer Trustee or Alternate Employer Trustee shall be elected by majority vote of the participating employers.  A successor Trustee or Alternate Trustee pursuant to this provision shall serve until the end of term of his or her predecessor Trustee.

b.    Successors to Employer Trustees or Alternate Employer Trustees whose terms have expired shall be elected by majority vote of the participating employers.  Each employer shall have one vote.

7.    APPOINTMENT OF SUCCESSOR UNION TRUSTEES

In the event of the termination of appointment, resignation, or death of a Union Trustee or Alternate Union Trustee, a successor Union Trustee or Alternate Union Trustee, shall be appointed by the International President of the Service Employees International Union.

8.    INDIVIDUALS DISQUALIFIED FROM SERVING AS TRUSTEES

No individual who has been convicted of any the crimes listed in Section 411(a) of the Employee Retirement Income Security Act of 1974, as amended, shall serve as a Trustee

- 8 -

during the period of disqualification specified in the statute.

9.    ACCEPTANCE OF APPOINTMENT BY TRUSTEES

Each Trustee and Alternate Trustee shall sign a document accepting his appointment as Trustee and agreeing to abide by the terms and provisions of this Trust Agreement.

10.   TERMINATION OF APPOINTMENT BY APPOINTING-ENTITY

Except as may otherwise be specified in Sections 6 or 7 of this Article, the appointment of a Trustee or Alternate Trustee may be terminated by the entity which originally made the appointment according to such entity's internal rules, procedures, or practices.

The termination of a Trustee's or Alternate Trustee's appointment shall be effective upon the termination date specified in a written notice of termination, addressed to the Chairman and Secretary of the Trustees, prepared by the appointing entity.

11.   TERMINATION OF APPOINTMENT FOR FAILURE TO ATTEND MEETINGS

The appointment of a Trustee shall be automatically terminated if such Trustee or Alternate Trustee fails to attend three (3) consecutive  meetings of the Trustees without being excused from attendance by specific action of the remaining Trustees noted in the minutes, at the discretion of the remaining Trustees.

- 9 -

12. TERMINATION OF APPOINTMENT FOR CONVICTION OF A CRIME

The appointment of a Trustee or Alternate Trustee shall be automatically terminated if such Trustee or Alternate Trustee is convicted of any of the crimes listed in Section 411(a) of the Employee Retirement Income Security Act of 1974, as amended.

13. TERMINATION OF APPOINTMENT FOR MENTAL INCAPACITY

The appointment of a Trustee or Alternate Trustee shall be automatically terminated if such Trustee is declared mentally incompetent by a court decree.

14. RESIGNATION OF APPOINTMENT

A Trustee or Alternate Trustee may resign his appointment at any time.  Such resignation shall be effective upon the resignation date specified in a written notice of resignation addressed to the Chairman and Secretary of the Trustees.

15. VACANCIES

No vacancy in the position of Trustee shall impair the power of the remaining Trustees to administer the affairs of the Trust Fund so long as a quorum exists as specified in Article IV, Section 2, hereof.

16. RETURN OF BOOKS AND RECORDS

In the event of the termination of appointment,

resignation, or death of a Trustee, the Trustee (or his legal guardian, heirs, or personal representative) shall, upon the request of the Chairman or the Secretary of the Trustees, forthwith turn over to the Chairman or Secretary any and all records, books, documents, monies, and other property in the possession of the Trustee, or under his control, that belong to the Trust Fund or that were received by him in his capacity as Trustee.

## ARTICLE IV

## ADMINISTRATION OF THE HEALTH AND WELFARE FUND

1. MANNER OF VOTING

    Any action to be taken by the Trustees shall be determined by a vote of a majority of the Trustees present at a meeting of the Board of Trustees regularly and duly called.

2. CONSTITUTION OF A QUORUM

    To constitute a valid regular or special meeting of the Trustees a quorum must be present. A quorum shall consist of four trustees, at least one of whom is an Employer Trustee and one of whom is a Union Trustee.

3. MOTIONS

    Any Trustee, including the Chairman or Secretary, may offer or second any motion or resolution presented for the Trustees'

consideration.

4.  REGULAR MEETINGS

The Trustees shall hold regular periodic meetings consistent with the needs of Trust Fund business, provided that there shall be at least two (2) regular meetings held during each calendar year.  The Trustees shall determine the time and place of all such meetings.

5.  SPECIAL MEETINGS

Either the Chairman or the Secretary or any two (2) Trustees (one Employer Trustee and one Union Trustee) may call a special meeting of the Trustees by giving written notice to all the other Trustees of the time and place of such meeting at least ten (10) days before the date set for the meeting, provided that ten (10) days advance notice shall not be necessary if all Trustees are agreeable to an earlier meeting.

6.  ACTION WITHOUT A FORMAL MEETING

The Trustees may take action without a formal meeting by means of (a) a conference telephone call, arranged by the Chairman, the Secretary or the Administrator, in which all Trustees participate, (b) the presentation of a written motion or resolution sent to all Trustees by the Secretary or the Administrator and the subsequent obtaining of Trustee votes on the motion or resolution in telephone calls placed to each

Trustee by the Secretary or the Administrator, or (c) the presentation of a written motion or resolution sent to all Trustees by the Secretary or the Administrator and the subsequent obtaining of Trustee votes on the motion or resolution in letters sent by each Trustee to the Secretary or the administrative agent.

Any such action shall be reported in the minutes of the next formal meeting of the Trustees.

7.  ARBITRATION OF DEADLOCKED ISSUES

In the event the Employer Trustees and Union Trustees should deadlock on any matter submitted for their concurrence, the dispute may be referred by either group of Trustees to an impartial arbitrator in accordance with the labor arbitration rules of the American Arbitration Association.  A deadlock shall be deemed to occur when there is a tie vote on any motion before the Trustees.

The Trustees shall attempt to agree on a joint submission of the statement of the issue in dispute.  However, if the Trustee cannot jointly agree upon such a statement, each group of Trustees shall submit to the arbitrator, in writing, its version of the issue in dispute.  As part of his award, the arbitrator shall state his determination of the issue in dispute.  The expense of any such arbitration, including any court proceedings relating thereto, and the fee of the arbitrator and the reasonable attorney and witness fees of the

parties, shall be chargeable to the Trust Fund.

The decision and award of the arbitrator shall be final and binding upon the Trustees and upon all parties whose interests are affected thereby.

The procedure specified in this Section shall be the sole and exclusive procedure for the resolution of deadlocked issues.

8.    ELECTION OF CHAIRMAN AND SECRETARY

The Trustees shall elect one of their number as Chairman and one as Secretary.  One of these officers shall be an Employer  Trustee and one shall be a Union Trustee.

The Chairman and the Secretary shall each hold office indefinitely, provided that when a particular Chairman and Secretary have held office for two (2) years, or at any time thereafter, the Employer Trustees or the Union Trustees may obtain, on their request, a rotation of offices, or a new election, or both.

A Chairman or Secretary may resign his or her office at any time.  Such resignation shall be effective upon the resignation date specified in a written notice of resignation addressed to the remaining Trustees.  In case of the resignation, death, or termination of appointment of either the Chairman or the Secretary, there shall be a new election of both officers.


9.    DUTIES OF CHAIRMAN AND SECRETARY

The Chairman shall chair the meetings of the Trustees,

shall appoint all committees, and shall carry out such other duties as the Trustees may assign.

The Secretary, in the absence of the Chairman, shall act in the place of the Chairman and perform the Chairman's duties. The Secretary shall also advise the Trustees as to all correspondence and financial reports pertaining to the Trust Fund and shall keep minutes or records of all meetings, proceedings, and actions of the Trustees, provided that these particular responsibilities may be delegated to the Administrator or to other of the professional or non-professional service providers retained by the Trustees.

10. AUTHORIZED SIGNATURES

The Chairman or the Secretary or any two authorized Trustees (one Employer Trustee and one Union Trustee) shall sign all negotiable instruments, certificates, contracts, government reports, and other legal documents on behalf of the Trust Fund, provided that the authority for signing negotiable instruments may be delegated to the Administrator, corporate trustee (if any), depository bank, or custodian bank. All persons doing business with the Trust Fund may rely on such signatures.

If the Trust Fund issues benefit checks to participating employees or their beneficiaries, the signatures of the Chairman and Secretary may be affixed thereto by facsimile signature device, under safeguards determine by the Trustees.

11. COMPENSATION AND EXPENSES

No Trustees shall receive any compensation from the Trust Fund for services as a Trustee except as may be allowed under the Employee Retirement Income Security Act of 1974, as amended, and as may be authorized by the Trustees.

Each Trustee shall be reimbursed out of the Trust Fund for all reasonable expenses properly and actually incurred by him in the administration of the Trust Fund.

The Trustees shall establish the procedures and conditions for the payment of compensation (if any) and for the reimbursement of expenses.

12. BENEFITS TO TRUSTEES NOT PROHIBITED

Nothing in this Trust Agreement shall prohibit a Trustee from receiving any benefits under the terms of the Plan, if he or she is otherwise eligible for the same.

ARTICLE V

PARTICIPATION

1. EMPLOYEES & EMPLOYERS ENTITLED TO PARTICIPATE

Employees represented by the Union shall be allowed to participate in the Trust Fund. Any employer or employer association with whom the Union enters into a collective bargaining agreement requiring contributions to the Trust Fund shall be a participating employer with respect to the Trust

- 16 -

Fund.

2.   BARGAINING UNITS ENTITLED TO PARTICIPATE

The following labor organizations (or their successors), and the employers and employer associations with whom such labor organizations enter into collective bargaining agreements requiring contributions to the Trust Fund, and the employees in the bargaining units covered by such agreements, shall be allowed to participate in the Trust Fund:  Service Employees International Union Local 82 and any other Local Union affiliated with the Service Employees International Union.

The Trustees, however, shall have the authority to decline or terminate the participation of a particular bargaining unit if (a) the labor organization and the employer fail to provide the Trustees with a copy of their collective bargaining agreement; (b) the language of the contributions provisions of the collective bargaining agreement does not meet the requirements established by the Trustees (if any); (c) the employer fails to submit a subscription agreement binding it to this Trust Agreement, if required; (d) the negotiated contribution rate is lesser, or greater, than the contribution rate supporting a particular benefit program then being administered by the Trustees, provided that the Trustees, in their discretion, may accept the different contribution rate, and establish different eligibility rules or benefit formulas for the employees affected; or (e) there exist other facts and

- 17 -

circumstances that, in the Trustees' discretion, justify a declination or termination of participation.

3.    OTHER BARGAINING UNITS

The Trustees shall have the authority to permit labor organizations (other than those specified above) and employers and employer associations with whom such labor organizations bargain, and the employees in the bargaining units covered by collective bargaining agreements, to participate in the Trust Fund.

The participation of such bargaining units shall be entirely discretionary with the Trustees and shall be subject to whatever terms and conditions they may impose.

4.    NON-BARGAINING UNIT EMPLOYEES OF PARTICIPATING EMPLOYERS

The Trustees shall have the authority to enter into special agreements directly with participating employers who are contributing for their bargaining unit employees, by the terms of which such an employer agrees to make contributions to the Trust Fund so that non-bargaining unit employees of the employer can be covered by the Plan.  To the extent allowed by law, the Trustees may deem corporate owner-officers, sole proprietors, and partners of participating employers as "participating employees" and permit them to be included as non-bargaining unit employees.

The acceptance of such special agreements shall be entirely

- 18 -

discretionary with the Trustees and shall be subject to whatever terms and conditions they may impose.

5.    STAFF EMPLOYEES OF PARTICIPATING LABOR ORGANIZATIONS

The Trustees shall have the authority to enter into special agreements directly with participating labor organizations by the terms of which such a labor organization agrees to make contributions to the Trust Fund so that the employees of the labor organization can be covered by the benefit plans provided through the Trust Fund.

The acceptance of such special agreements shall be entirely discretionary with the Trustees and shall be subject to whatever terms and conditions they may impose.

6.    STAFF EMPLOYEES OF PARTICIPATING EMPLOYER ASSOCIATIONS

The Trustees shall have the authority to enter into special agreements directly with participating employer associations by the terms of which such an employer association agrees to make contributions to the Trust Fund so that the employees of the employer association can be covered by the benefit plans provided through the Trust Fund.

The acceptance of such special agreements shall be entirely discretionary with the Trustees and shall be subject to whatever terms and conditions they may impose.

7.    TRUST FUND EMPLOYEES

The Trustees shall have the authority to allow participation by the employees of the Trust Fund (if any), or of the SEIU National Industry Pension Fund and SEIU Vacation Fund in the Health and Welfare Plan provided through the Trust Fund. The cost of such coverage shall be chargeable to the fund to whose employees Health and Welfare coverage is extended.

Such coverage shall be entirely discretionary with the Trustees and shall be subject to whatever terms and conditions they may impose.

8.    UNAUTHORIZED PARTICIPATION; NO WAIVER BY TRUSTEES

It is expected that participating employers will submit contributions only on behalf of employees whom the Trustees have authorized to participate in this Health and Welfare Plan.  The receipt by the Trust Fund of contributions which may be submitted  on behalf of individuals who are not eligible to participate shall not prevent the Trustees from declining or terminating the participation of such individuals nor shall it constitute a waiver of any of the provisions of this Article or of the Plan.

## ARTICLE VI

## TRUSTEE RESPONSIBILITIES

1. **GENERAL DUTY – RECEIPT OF CONTRIBUTIONS AND CREATION AND ADMINISTRATION OF PLAN**

It shall be the general duty of the Trustees to receive the contributions from participating employers and any other income or assets that they may receive and, with such, to create and administer the Plan for the participating employees.

Additionally, the Trustees shall have the specific duties set forth in this Trust Agreement and such other duties as are imposed upon them by Section 302(c) of the Labor Management Relations Act of 1947, the Employee Retirement Income Security Act of 1974, and other applicable laws.

2. **COMPLIANCE WITH THE INTERNAL REVENUE CODE**

The Trustees shall administer the Trust Fund and the Plan so that, to the extent allowed in the Internal Revenue Code, employer contributions are tax deductible and the Trust Fund remains tax exempt.

3. **BASIS OF PAYMENTS TO AND FROM TRUST FUND**

The basis on which contributions of participating employers are made shall be a specified in the underlying collective bargaining agreement or special agreement. The basis on which benefits are paid out of the Trust Fund shall be as specified in the Health and Welfare Plan.

- 21 -

4.  APPLICATION OF TRUST FUND ASSETS

As required by Section 403 (c)(1) of the Employee
Retirement Income Security Act of 1974, as amended, the assets
of the Trust Fund shall never inure to the benefit of any
participating employer and shall be held for the exclusive
purposes of providing benefits to participating employees and
defraying reasonable expenses of administering the plan.

5.  FIDUCIARY STANDARDS

As required by Section 404(a)(1)(A) and (B) of the Employee
Retirement Income Security Act of 1974, as amended, the Trustees
shall discharge their duties and administer the Trust Fund
assets solely in the interest of the participating employees and
defraying reasonable expenses of plan administration.

In carrying out their duties the Trustees shall act with
the care, skill, prudence, and diligence under the circumstances
then prevailing that a prudent man acting in like capacity and
familiar with such matters would use in the conduct of an
enterprise of a like character and with like aims.

6.  DEPOSITS

The contributions, or any other monies which the Trustees
may receive, shall be deposited in one or more banks or similar
financial institutions supervised by the United States or a
state, pending the allocation of such monies for the payment of

- 22 -

current benefits and expenses, or for investment. Such monies may be commingled, on a temporary basis, with monies belonging to other related trust funds.

7.  INVESTMENTS

The Trustees shall invest all contributions or other monies not required for the payment of current benefits and expenses. The Trustees may invest and reinvest in bank accounts, savings and loan accounts, securities, mortgages, deeds of trust, notes, commercial paper, real estate, insurance contracts, and in such other property, real, personal, or mixed, as they deem prudent, provided that in the making of investments the Trustees shall diversify such investments as required by Section 404(a)(1)(C) of the Employee Retirement Income Security Act of 1974, as amended, so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so. Further, no investment shall be made which would constitute a "prohibited transaction" within the meaning of Section 406 of such Act, provided that the Trustees shall have the authority to apply to the Secretary of Labor for a conditional or unconditional exemption from any of the "prohibited transaction" rules, as they deem necessary in the administration of the Trust Fund and the plan.

8.  SPECIFICALLY PERMITTED INVESTMENTS

In the event the Trustees designate one or more banks or

- 23 -

similar financial institutions supervised by the United States or a state to serve as custodian of the trust assets, or as corporate trustee, or in another fiduciary capacity, the monies belonging to the Trust Fund may be invested in the accounts of such bank or institution, provided that such accounts bear a reasonable interest rate.

Further, the monies of the Trust Fund may be invested in (a) a common or collective trust fund, or pooled investment fund, maintained by a bank or trust company supervised by the United States or a state, or (b) in a pooled investment fund of an insurance company, even though such bank, trust company, or insurance company is a party-in-interest as that term is designated in Sections 3(14) of the Employee Retirement Income Security Act of 1974, as amended, provided that the bank, trust company, or insurance company receives not more than reasonable compensation for managing such an investment.

9.  TITLE TO INVESTMENTS AND OTHER ASSETS

Title to all investments or other assets of the Trust fund shall be maintained in the name of the Trust Fund, provided that for convenience in transferring stocks, bonds, or other negotiable securities, title to such securities may be held in the name of the Trust Fund's custodian bank or its nominee.

Except as may be authorized by regulation of the Secretary of Labor, the indication of ownership of all investments and other assets of the Trust Fund shall not be maintained outside

the jurisdiction of the district courts of the United States.

## 10.  FIDELITY BOND

The Trustees shall procure a fidelity bond in the amount required by Section 412(a) of the Employee Retirement Income Security Act of 1974, as amended, covering each Trustee or other person who receives, handles, disburses, or otherwise exercises custody or control of any of the funds or other property of the Trust Fund.  The cost of such bond shall be chargeable to the Trust Fund, provided that, if such bond covers persons other than the Trustees or their employees (if any), and if there is an additional premium for the coverage for such other persons, the additional premium shall be chargeable to such other persons.

## 11.  RECORDS

The Trustees shall maintain records of their administration of the Trust Fund, including records of all receipts and disbursements, all investments purchased or sold, the text of the Plan and all benefit programs, all employee eligibility listings, all minutes of Trustee meetings, and all correspondence.  No such record shall be destroyed except upon the specific action of the Trustees, and destruction shall not be directed until a period of seven (7) years has elapsed from the date of the record was created.

12.  ANNUAL AUDIT

The Trustees shall engage an independent qualified public accountant and shall authorize such accountant to conduct an annual financial examination of the Trust Fund, as required by Section 103(a)(3)(A) of the Employee Retirement Income Security Act of 1974, as amended.  The cost of such examination shall be chargeable to the Trust Fund.

A statement of the result of each such examination shall be submitted to the Trustees for their review and, further, shall be made part of the Trust Fund's annual report.

13.  PLAN DESCRIPTION

The Trustees shall prepare and file with the Department of Labor a plan description, a summary plan description, and any modifications or changes in the information contained in such description, as required by Section 102 of the Employee Retirement Income Security Act of 1974, as amended.

The Trustees shall also furnish to participating employees copies of the summary plan description and copies of any modifications or changes in the information in such description, as required by Section 104(b)(1) of such Act.

14.  ANNUAL REPORT

The Trustees shall prepare and file with the Department of Labor an annual report, as required by Section 103 of the Employee Retirement Income Security Act of 1974, as amended.

- 26 -

The Trustees shall also furnish to participating employees portions of the annual reports as required by Section 104(b)(3) of such Act.

15. DOCUMENTS TO BE EXAMINED OR FURNISHED

The Trustees shall make copies of (a) this Trust Agreement, (b) the plan description, (c) the latest annual report, (d) the applicable collective bargaining agreement, and (e) any other contracts or instruments under which the Health and Welfare Plan is established or operated available for examination by participating employees in the Trust Fund office, as required by Section 104(b)(2) of the Employee Retirement Income Security Act of 1974, as amended.

The Trustees shall, upon written request by a participating employee, furnish to the participating employee a copy of (a) this Trust Agreement, (b) the plan description, (c) the latest up-dated summary plan description, (d) the latest annual report, (e) any terminal report, (f) the applicable collective bargaining agreement, and (g) any other contracts or instruments under which the plan is established or operated, as required by Section 104(b)(4) of such Act. Such copies shall be furnished within thirty (30) days of this request. The Trustees may impose a reasonable charge for such copies as may be allowed by regulation of the Secretary of Labor.

- 27 -

16.   PROCEDURE FOR ESTABLISHING FUNDING POLICY

The Trustees shall meet periodically with the Plan's consultant, the independent qualified public accountant, and such other Trust fund advisers as may be appropriate, for the purpose of anticipating the short run and long run financial needs of the Trust Fund.  Thereupon, the Trustees shall adopt an appropriate funding policy and method for the Trust Fund.

The funding policy and method shall be considered by the Trustees in the management of Trust Fund investments.  In the event the management of Trust Fund investments has been delegated to an investment manager, the funding policy and method shall be considered by such manager.

ARTICLE VII

TRUSTEE POWERS

1.   GENERAL POWER

Except as may be expressly limited by the terms of this Trust Agreement, the Trustees shall have full and exclusive authority and discretion to control and administer the Trust Fund and the Health and Welfare Plan as well as to interpret both the terms of this Trust Agreement and the terms or rules of any plan established by the Trustees.

The authority of the Trustees not only encompasses the specific powers recited in the various paragraphs of this Trust Agreement but also includes the general power to do all actions, including the expenditure of Trust Fund monies, which they may deem necessary to carry out the purposes of this Trust

- 28 -

Agreement.

The Trustees may implement their powers through the adoption of appropriate motions, resolutions, or administrative rules and regulations.

2.   SPECIFIC POWERS DISCRETIONARY

The recitation of specific powers in this Trust Agreement shall not be interpreted as compelling the exercise of any such power. The exercise of specific powers is discretionary with the Trustees.

3.   AMENDMENT OF PLAN(S)

The Trustees shall have the authority to amend the Plan or any plan hereafter adopted, including amendments that expand, restrict, or terminate all or part of the rules relating to eligibility for benefits, or to the amount and nature of such benefits, as they determine. Amendments may be made on a prospective or retroactive basis in accordance with applicable laws.

4.   DESIGN OF THE PLAN(S)

The Trustees shall have the authority to determine the provisions of the Plan(s), including the determination of the rules under which participating employees shall be eligible for benefits and the nature and amount of such benefits. The Trustees have the authority to make such determinations for each bargaining unit on an independent and individual basis. They

- 29 -

shall also have the authority to determine the eligibility and benefit rules which will apply to any class or classes of beneficiaries. If there are different contribution rates, the Trustees may establish different eligibility rules, or benefit formulas, for the participating employees who are affected thereby.

5. CREATION OF BENEFIT PLANS

The Trustees shall have the authority to create and maintain an employee welfare benefit plan (or plans).

The Trustees shall have the authority to amend such benefit plan (or plans), or any plans hereafter adopted, including amendments that expand, restrict, or terminate all or part of the rules relating to eligibility for benefits, or to the amount and nature of such benefits, as they may determine. Amendments may be made on a prospective or retroactive basis in accordance with applicable law.

6. ADDITIONAL BENEFIT PLANS AND PROGRAMS

The Trustees shall have the authority to create and administer additional employee welfare benefit plans, and additional benefit programs within the Plan, as may be lawful under Section 302(c) of the Labor Management Relations Act of 1947 and under Section 3(1) of the Employee Retirement Income Security Act of 1974, provided that such plans and programs are supported by employer or employee contributions.

- 30 -

7.   MEANS OF PROVIDING BENEFITS

The Trustees shall have the authority to provide the benefits, in whole or in part, directly from the Trust Fund or to contract with an insurance carrier, service organization, health maintenance organization or other entity, to underwrite or provide such benefits.


8.   FACILITY OF PAYMENT

The Trustees shall have the authority to adopt rules by the terms of which benefit payments owing to minors or incompetents may be paid instead to a person or institution providing care or other services to such minor or incompetent, even though a legal guardianship does not exist.  Benefit payments made under any such rules shall fully discharge the Trust Fund obligation to the minor or incompetent.


9.   SELF-PAYMENTS BY EMPLOYEES

The Trustees shall have the authority to include provisions in the benefit plans by the terms of which participating employees, during periods of strikes, lockouts, employer delinquencies, leaves of absence, disabilities, layoffs, termination, or retirement may be permitted to make contributions in their own behalf.

10.   AN ADMINISTRATIVE AGENT OR ADMINISTRATOR

The Trustee shall have the authority to retain, at the expense of the Trust Fund, one or more administrative agents or administrator(s) to assist the Trustees in the day to day administration of the Trust Fund and the Plan.  Such assistance may include the receipt and recording of contributions, the processing of delinquent accounts, the preparation of employee eligibility listings, the processing of benefit applications, the  payment of benefits, the maintenance of financial records, and the handling of routine communications.

The administrative agent may be a contract administrator or salaried administrator.  In the event the Trustees employ a salaried administrator they shall also have the authority to employ such additional administrative staff personnel as may be necessary.

The Trustees shall periodically review the performance of the administrative agent.

11.   BANKING SERVICES

The Trustees shall have the authority to retain, at the expense of the Trust Fund, one or more banks or similar financial institutions supervised by the United States or a state, to perform depository or custodial services, or to serve as corporate trustee or co-trustee, on behalf of the Trust Fund.

The Trustees shall periodically review the performance of

- 32 -

the banks which they have retained to perform the banking services.

## 12.   OTHER PROFESSIONAL AND NON-PROFESSIONAL HELP

The Trustees shall have the authority to retain, at the expense of the Trust Fund, one or more accountants, actuaries, attorneys, employee benefit plan consultants, investment managers, payroll auditors, and other professional or nonprofessional help, as they may deem necessary in the administration of the Trust Fund and the Plan.  Unless  limited by the Employee Retirement Income Security Act of 1974,  as amended, the retention of any such professional or non-professional help may be on a contract or salaried basis.

The Trustees shall periodically review the performance of their professional and non-professional help.

## 13.   OBTAINING OF NECESSARY PREMISES, EQUIPMENT, AND SUPPLIES

The Trustees shall have the authority to purchase or lease suitable premises and equipment and to purchase materials and supplies, at the expense of the Trust Fund, as they may deem necessary in the administration of the Trust Fund and the Plan.

## 14.   INSURANCE

The Trustees shall have the authority to purchase policies of insurance (liability, property damages, casualty, and errors and omissions) to protect the Trust Fund and to protect

- 33 -

themselves and their employees (if any) with respect to the activities on behalf of the Trust Fund as they may deem necessary. The cost of such insurance policies shall be chargeable to the Trust Fund, provided that, if such insurance policies cover persons other than the Trustees or their employees (if any), and if there is an additional premium for the coverage for such other persons, the additional premium shall be chargeable to such other persons.

Any policy of errors and omissions insurance which covers the Trustees individually shall contain a recourse clause as required by Section 410 (b)(1) of the Employee Retirement Income Security Act of 1974, as amended, provided that nothing herein shall prevent a Trustee (or an employer, employer association, or labor organization acting on his behalf) from purchasing for the Trustee or Trustees a waiver of the recourse clause or a separate policy insuring against such recourse.

## 15. BORROWING MONEY

The Trustees shall have the authority to borrow money for the Trust Fund, with or without security, as they may deem necessary in the administration of the Trust Fund and the Plan.

## 16. RESERVE FUNDS

The Trustees shall have the authority to maintain reasonable reserve funds for future contingencies as they may deem necessary in the administration of the Trust Fund and the

- 34 -

Plan.

17. PAYMENTS OF TAXES

The Trustees shall have the authority to pay, at the expense of the Trust Fund, all real and personal taxes, and other taxes and assessments of any kind, that may be lawfully levied or assessed against the Fund.

18. REFUNDS OF CONTRIBUTIONS ERRONEOUSLY PAID

The Trustees shall have the authority to adopt rules by the terms of which refunds of contributions may be made to a participating employer where the employer has paid such contributions in error, provided that employer refunds shall be made only as permitted by Section 403(c) of the Employee Retirement Income Security Act of 1974, as amended.

19. PROSECUTION OF LEGAL ACTIONS OR CLAIMS

The Trustees shall have the authority to originate and maintain any legal actions or claims involving potential legal action, at the expense of the Trust Fund, as they may deem necessary in the administration of the Trust Fund and the benefit plan. All such actions and claims shall be prosecuted in the name(s) of the Trust Fund, the Trustees or in the name of an assignee.

- 35 -

20.  DEFENSE OF LEGAL ACTIONS AND CLAIMS

The Trustees shall have the authority to defend all legal actions, claims involving potential legal actions, and investigatory proceedings initiated against the Trust Fund or against one or more of the employees of the Trust Fund (if any) that relate to the administration of the Trust Fund or the Plan. Except as stated below, the defense of such actions, claims, and proceedings shall be at the expense of the Trust Fund.

If a final court decree establishes personal liability on the part of specified Trustees, administrative agents, or employees (if any) for breach of their fiduciary responsibilities, as provided in Section 409(a) of the Employee Retirement Income Security Act of 1974, as amended, and orders that the specified persons are to bear the expenses of their own defense, their attorney fees shall not be chargeable to the Trust Fund.  If attorney fees and costs have already been charged to the Trust Fund, the specified persons shall be obligated to repay the Trust Fund their pro-rata share of such fees and costs.

21.  COMPROMISE OF LEGAL ACTIONS OR CLAIMS

The Trustees shall the authority to compromise, settle, or release all legal actions or claims involving potential legal actions, in favor of or against the Trust Fund, on such terms and conditions as they may determine.

- 36 -

22.  **PENALTIES FOR FALSE OR WITHHELD INFORMATION**

The Trustees shall have the authority to adopt rules and regulations by the terms of which reasonable penalties or forfeitures may be imposed upon participating employees who (a) falsify any information requested of them in the administration of the Trust Fund and the Plan, or (b) fail to provide requested information within a reasonable time.

23.  **CORRECTION OF ERRORS**

It is recognized and acknowledged by all parties that the Trustees will provide benefits to participating employees based on Trust Fund records.  It is also recognized and acknowledged that such records could be incorrect due to (a) employers reporting individuals who are not eligible for participation, (b) employers reporting incorrect names or incorrect social security numbers, (c) employers reporting more (or less) than the hours or contributions required to be reported, (d) delinquent employer reports, (e) employees submitting incorrect social security numbers or false benefit applications, (e) recording or computation errors by the administrative agent, (f) computer errors, or (g) other similar circumstances.  The Trustees shall have the authority to correct the Trust Fund records and to terminate participation, benefits, or seek the recovery of benefit overpayments, as they may determine to be appropriate.

24. SUBSCRIPTION AGREEMENTS

The Trustees shall have the authority to create and distribute subscription agreements, at the expense of the Trust Fund, by the terms of which a participating employer acknowledges its obligation to make contributions to the Trust Fund and subscribes to the terms and provisions of this Trust Agreement.

25. PARTICIPATION IN NON-PROFIT EDUCATIONAL ORGANIZATIONS

The Trustees shall have the authority to participate in non-profit foundations, corporations, councils, committees, or other organizations which sponsor educational programs or provide educational materials pertaining to the administration of trust funds of this nature and of employee benefit plans. If the Trustees act to participate in any such non-profit organizations, the membership or participation fees of the organization shall be chargeable to the Trust Fund.

The Trustees shall also have the authority to purchase educational materials and to provide for the attendance of the Trustees, or of such of their employees (if any), as they may designate, at educational conferences and meetings. The costs of such materials and attendance shall be chargeable to the Trust Fund.

26. RECIPROCITY

The Trustees shall have the authority to enter into

- 38 -

reciprocal agreements with other employee benefit trust funds providing similar benefits to those provided through the Trust Fund, for the exchange of eligibility credits or monies or for the payment of pro-rata benefits, in order to protect employees who may terminate their participation in the Trust Fund and begin participation in a reciprocal trust fund and vice-versa.

## 27. COORDINATED ADMINISTRATION

The Trustees shall have the authority to coordinate the administration of the Trust Fund and of the Plan with the administration of other SEIU employee benefit trust funds and benefit plans, to such extent as they may determine.

## 28. MERGERS

It is recognized that at some time or times in the future, the Trustees may deem it in the best interest of the Trust Fund and of the participating employees, their beneficiaries, participating employers, employer associations and labor organizations to accept the merger of another employee welfare benefit trust fund into the Trust Fund, or to merge the Trust Fund into another employee welfare benefit trust fund.

In the event that another employee welfare benefit trust fund is to be merged into the Trust Fund, the Trustees shall have the authority to negotiate and consummate an appropriate merger agreement, and pursuant thereto, to accept a transfer - of the remaining monies, assets, and liabilities from the other

trust fund.

In the event the Trust Fund is to be merged into another employee welfare benefit trust, the Trustees shall have the authority to negotiate and consummate an appropriate merger agreement, and pursuant thereto, to terminate the Trust Fund and to transfer the remaining monies, assets, and liabilities to the other trust fund. However, if the signatory parties hereto are other than the Trustees, no merger of the Trust Fund into another trust fund shall be negotiated or consummate without the written approval of the signatory parties.

29. INTERPRETATION AND APPLICATION OF DOCUMENTS

The Trustees shall have the authority to interpret and apply the provisions of this Trust Agreement, or of the Plan, or of their own motions, resolutions, and administrative rules and regulations, or of any contracts, instruments or writing that they may have adopted or entered into.

ARTICLE VIII

ALLOCATION OR DELEGATION OF TRUSTEE
RESPONSIBILITIES

1. ALLOCATION OF RESPONSIBILITIES TO COMMITTEES

The Trustees may allocate to one or more committees of Trustees all or part of the following responsibilities, with full power to act: (a) the responsibility for managing the Trust Fund investments (if not otherwise delegated to a qualified

- 40 -

investment manager); (b) the responsibility for reviewing and
determining benefit claims of participating employees; (c) the
responsibility for conducting hearings and issuing
determinations as provided for in Article X, Section 2, hereof;
(d) the responsibility for resolving questions or problems that
may encountered in connection with payroll auditing activities;
(e) the responsibility for resolving questions or problems that
may be encountered for in connection with the collection of
delinquent employer accounts; (f) the responsibility for
resolving problems that may be encountered in connection with
the day-to-day work of the Administrator or other agent; (g) the
responsibility for reviewing the performance of the qualified
investment manager (if any), and of the other professional
persons retained by the Trustees.

In the event the Trustees elect to allocate any of the
stated responsibilities they shall do so by the adoption of a
motion or resolution calling for the appointment of a committee
of Trustees (consisting of equal numbers of Employer Trustees
and Union Trustees) and specifying the particular responsibility
that is being allocated. With respect to the responsibility
that is allocated, the committee shall have all the powers of
the full Board of Trustees. Any action to be taken by the
committee shall be determined according to the voting formula
contained in Article IV, Section 1 hereof. If the committee
members deadlock in any such matter submitted for  their
concurrence, such matter shall be referred to the full Board of

Trustees for review and action.

Nothing contained herein shall in any way limit the authority of the Trustees to create additional committees for the purpose of conducting the affairs of the Trust Fund, provided that any such committee shall be empowered only to make recommendations with respect to the matters referred to it.

2. DELEGATION OF INVESTMENT RESPONSIBILITIES

The Trustees may delegate all or part of their responsibilities for the management of the Trust Fund investments to one or more qualified investment managers, as that term is defined in Section 3(38) of the Employee Retirement Income Security Act of 1974, as amended. In the event the Trustees elect to delegate investment responsibility they shall do so by the adoption of a motion or resolution making the delegation to a designated investment manager. The delegation shall be effective when the investment manager accepts the delegation and acknowledges in writing his status as a fiduciary with respect to the Trust Fund.

3. DELEGATION OF OTHER RESPONSIBILITIES

The Trustees may delegate all or part of their responsibilities with respect to the administration of the Trust Fund or the Plan (except investment responsibilities) to their administrative agent or to any other person whom they may designate for such purpose.

- 42 -

In the event the Trustees elect to delegate a particular responsibility they shall do so by the adoption of a motion or resolution making the delegation to a designated person. If the delegation involves a responsibility other than one which is ministerial in nature, the designated person shall also acknowledge in writing his status as a fiduciary with respect to the Trust Fund.

4.   REVIEW OF PERFORMANCE

In the event the Trustees elect to allocate or delegate Trustee responsibilities they shall periodically review the performance of the persons to whom such responsibilities have been allocated or delegated.

## ARTICLE IX
### CONTRIBUTIONS AND COLLECTIONS

1.   CONTRIBUTION REPORTING FORMS

The Trustees shall create and make available, at the expense of the Trust Fund, contribution reporting forms for the use of participating employers in making their contributions.

2.   CONTRIBUTION DUE DATE

All contributions shall be due by the date specified in the underlying collective bargaining agreement or special agreement. If the underlying collective bargaining agreement or special

- 43 -

agreement does not specify a due date, the Trustees shall have the authority to fix such a date.

3.  DELINQUENT CONTRIBUTIONS

A participating employer shall be considered to be delinquent in the payment of contributions if it (a) fails to submit a contribution reporting form, and the contributions detailed therein, by the close of business on the due date, or (b) fails to submit contributions on behalf of all the employees for whom contributions are required by the underlying collective bargaining or special agreement, or (c) fails to compute properly the contributions according to the required contribution formula specified in the underlying collective bargaining agreement or special agreement.

The Trustees shall undertake reasonable efforts to collect known delinquent contributions and related claims.

4.  AUDIT OF EMPLOYER BOOKS AND RECORDS

The Trustees shall have the authority, at the expense of the Trust Fund, to audit the payroll books and records of a participating employer, either directly or through a qualified public accountant, as they may deem necessary in the administration of the Trust Fund. Such payroll audit may be undertaken pursuant to a routine payroll audit program or on an individual basis.

Whenever a payroll audit is authorized, the participating

- 44 -

employer involved shall make available to the Trustees, or the qualified public accountant designated by them, its payroll books and records.  Such books and records shall include (a) all records which the employer may be required to maintain under Section 209(a)(1) of the Employee Retirement Income Security Act of 1974, as amended, and (b) time cards, payroll journals, payroll check registers, cancelled payroll checks, copies of the employer's federal, state, and local payroll tax reports, and wages, or other compensation, of the employees or from which such can be verified.

In the event the payroll audit discloses that the participating employer has not paid contributions as required by the underlying collective bargaining agreement or special agreement, the employer shall be liable for the costs of the audit.  The Trustees shall have the authority, however, to waive all or part of such costs for good cause shown.


5.   LIQUIDATED DAMAGES AND INTEREST

It is recognized and acknowledged by all parties, including the participating employers, that the prompt and accurate payment of contributions is essential to the maintenance of a Trust Fund and the Plan and that it would be extremely difficult, if not impossible, to fix the actual expense and damage to the Trust Fund that would result from failure to of a participating employer to pay the required contributions within the time provided.  Therefore, if any participating employer

shall be delinquent in the payment of contributions such employer shall be liable, in addition, for liquidated damages of twenty percent (20%) of the amount of the contributions which are owed or one hundred dollars ($100.00) whichever is greater. In addition, the delinquent contributions shall bear interest, from the due date until they are paid, at the per annum rate charged by the Internal Revenue Service for late payment of taxes pursuant to Section 6621 of the Internal Revenue Code. The Trustees shall have the authority, however, to waive all or part of the liquidated damages or interest for good cause shown.

6. ATTORNEY FEES AND COURT COSTS

Further, in event the Trustees place the account in the hands of legal counsel for collection, the delinquent employer shall be liable for reasonable attorney fees (with a minimum of $100.00) and for all reasonable costs incurred in the collection process, including court fees, audit fees, etc. The Trustees shall have the authority, however, to waive all or part of the attorney fees or collection costs for good cause shown.

7. VENUE FOR COLLECTION ACTIONS

In the event a collection suit is initiated, venue of such suit may be laid in any court of competent jurisdiction (federal or state) at the option of the Trustees.

- 46 -

8.    PROTECTION OF EMPLOYEES IN CASES OF DELINQUENCY

To protect participating employees in situations where they may be denied benefits because their employer is delinquent in the payment of contributions, the Trustees shall have the authority to extend eligibility credits to such employees or to direct the payment of benefits to them,  or to their beneficiaries, in whole or in part, as they may determine.

The extension of eligibility credits or the payment of benefits shall not, however, release the delinquent employer from the responsibility for payment of the contributions owed.

9.    COORDINATION WITH PROVISIONS IN COLLECTIVE
      BARGAINING AGREEMENTS

In the event the underlying collective bargaining agreement contains provisions relating to delinquencies that specify additional remedies, or obligate the delinquent employer to greater amounts of liquidated damages, interest, or attorney fees than those set forth herein, the Trustees, at their option, may pursue the additional remedies or impose the greater charges.  The Trustees shall not be obligated, however, to pursue the collection of delinquent accounts through the grievance arbitration procedures (if any) provided in the underlying collective bargaining agreement.

- 47 -

ARTICLE X

HEARING AND ARBITRATION PROCEDURES

1.   PROCEDURES TO BE FOLLOWED

The Trustees and the participating employees shall follow these hearing procedures.

The procedures specified in this Article shall be the sole and exclusive procedures available to a participating employee who is dissatisfied with an eligibility determination or benefit award, or who is otherwise adversely affected by any action of the Trustees.

2.   HEARINGS BEFORE BOARD OF TRUSTEES

Any participating employee of a participating employer who applies for benefits and is ruled ineligible by the Trustees (or by a committee of Trustees, an administrative agent, insurance carrier, or other organization acting for the Trustees) or who believes (s)he did not receive the full amount of benefits to which (s)he is entitled, or who is otherwise adversely affected by any action of the Trustees, shall have the right to request the Trustees conduct a hearing in the matter, provided that the employee makes such a request, in writing, within sixty (60) days after being apprised of, or learning of, the action. The Trustees shall then conduct a hearing at which the participating employee shall be entitled to present his position and any evidence in support thereof. The participating employee shall be entitled to present his or her position and any evidence in

- 48 -

support thereof and may be represented at any such hearing by an attorney or by an other representative of the employee's choosing.  Thereafter, the Trustees  shall issue a written decision affirming, modifying, or setting aside the former action, which decision shall be final and binding on all parties.

## ARTICLE XI
## LIMITATIONS

1.  **LIABILITIES AND DEBTS OF TRUST FUND**

   1.  No signatory party or Trustee, and no participating employer, employer association, union, labor organization or employee shall be responsible for the liabilities or debts of the Trust Fund.

2.  **LIABILITIES AND DEBTS OF PARTICIPATING PARTIES**

   No participating employer, employer association, union or labor organization shall become responsible by reason of their participation in the Trust fund for the liabilities or debts of any other participating employer, employer association, or labor organization.

3.  **PERSONAL LIABILITIES OF TRUSTEES**

   No Trustee shall incur any personal liabilities in connection with the administration of the Trust Fund or the Plan, except for such liability that may be established in

- 49 -

accordance with Section 409(a) of the Employee Retirement Income Security Act of 1974, as amended.

No Trustee shall be personally liable for a breach of fiduciary responsibilities if such breach was committed before he became a Trustee or after he ceased to be a Trustee.

4.  JUDGMENTS AGAINST TRUST FUND

Any money judgment against the Trust Fund shall be enforceable only against the Trust Fund entity and shall not be enforceable against any Trustee or other person, unless liability against the Trustee or other person, in his individual capacity, is established in accordance with Section 409(a) of the Employee Retirement Income Security Act of 1974, as amended.

5.  PARTICIPATING PARTIES' RIGHTS

Except as specifically provided for in this Trust Agreement, or in the Plan, no participating employer, employer association, union, labor organization, or employee, nor any beneficiary or participating employee shall have any right, title, or interest in or to the Trust Fund, or in or to the contributions or in or to the benefits provided.

No participating employee shall be entitled to receive any part of the contributions in lieu of the benefits provided, nor shall a participating employee who does not qualify for benefits,  or his employer, have any claim to the contributions which may have been paid on his behalf.

- 50 -

6. **CESSATION OF PARTICIPATION**

In the event a participating employer, employer association, union or labor organization, or groups thereof should cease their participation in the Trust Fund, there shall be no division or allocation of any of the monies or assets of the Trust Fund, except as may be required by law.

7. **PROTECTION OF TRUST FUND, CONTRIBUTIONS, AND BENEFITS**

No part of the Trust Fund (including the contributions) or the benefits payable under the Plan shall be subject in any manner, by a participating employee or beneficiary, to anticipation, alienation, sale, transfer, assignment, encumbrance, or charge, and any such attempt shall be null and void.

Further, no part of the Trust Fund (including the contributions) or the benefits payable under the Plan shall be liable for the debts of a participating employee or beneficiary, nor be subject in any manner to garnishment, attachment, lien, charge, or any other legal process brought by any person against a participating employee or beneficiary, and any such attempt shall be null and void.

8. **RELIANCE UPON WRITTEN DOCUMENTS**

The Trustees may act upon any written letter, report, certificate, instrument, or other document submitted to them by

- 51 -

any participating employer, union, labor organization or employee, or by any other person, where such document appears to be genuine and to be signed by the proper person or persons, and the Trustees shall be under no duty to make any investigation or inquiry as to any statement contained in such document.

9.  AGENTS OF TRUST FUND

The Trust Fund is an entity separate and apart from the participating employers, employer associations, and the Union. Accordingly, unless authorized in a motion or resolution of the Board of Trustees, no participating employer, employer association, or Union, nor any individual employed thereby, shall have any authority to act or function for or on behalf of the Trust fund or as an agent thereof.

Likewise, unless authorized in a motion or resolution of the Board of Trustees, no individual Trustee shall have any authority to act or function for or on behalf of the Trust Fund or as an agent thereof.

ARTICLE XII

MISCELLANEOUS

1.  TRUST FUND OFFICES

The Trust Fund shall maintain a principal office and sub offices, where necessary, in such locations as the Trustees may

- 52 -

determine.

2.   APPLICABLE LAWS AND REGULATIONS

This Trust Agreement shall be interpreted, and the Trust Fund shall be administered, in accordance with Section 302(c) of the Labor Management Relations Act of 1947, the Internal Revenue Code, the Employee Retirement Income Security Act, and the regulations pertinent thereto, and other applicable statutes and regulations, as such statutes and regulations presently exist or as they may hereafter be amended.

References herein to particular sections of the above mentioned statutes shall include any regulations pertinent to such sections and any subsequent amendments to such sections or regulations.

3.   SERVICE IN MORE THAN ONE FIDUCIARY CAPACITY

Any Trustee or other person who is a fiduciary may serve the Trust Fund in more than one fiduciary capacity.

4.   NOTICES

Any written notice permitted or required by this Trust Agreement shall be personally delivered to the person for whom it is intended, or sent to such person at his residence or business address by first class mail overnight mail or prepaid telegram.

- 53 -

5. SEVERABILITY

If any provision of this Trust Agreement, or of the Plan, is held to be illegal or invalid for any reason, such illegality or invalidity shall not affect the remaining portions of the Trust Agreement or of the Plan.

6. TITLES AND WORDS

The titles of the various articles and sections of this Trust Agreement are inserted solely for convenience or reference and are not a part of, nor shall they be used to construe, any term or provision hereof. Whenever any words are used herein in the masculine gender they shall be construed as though they were used in the feminine gender, and words in singular form shall be construed as though they were used in the plural form, in all cases where they would apply.

ARTICLE XIII

AMENDMENTS AND TERMINATIONS

1. AMENDMENTS

This Trust Agreement may be amended or modified at any time by a majority vote of the Trustees.

2. TERMINATION

This Trust Agreement may be terminated at any time, by action of the Trustees, provided that, if the signatory parties

hereto are other than the Trustees, any such action shall require the written approval of the signatory parties (or their successors).

In any event, this Trust Agreement shall be automatically terminated upon the expiration of all collective bargaining agreements and special agreements requiring the payment of contributions to the Fund, provided that for purposes of this provision a collective bargaining agreement or special agreement shall not be deemed to have expired in a strike or lockout situation, unless such strike or lockout continues for more than six (6) months.

3.    ALLOCATION UPON TERMINATION

Upon termination of this Trust Agreement, the Trustees shall wind up the affairs of the Trust Fund.  Where the termination  occurs as a result of a merger, as authorized by Article VII, Section 25, any and all monies and assets remaining in the Trust  Fund, after payment of expenses, shall be transferred to the trust fund with which merger has been negotiated.  With respect  to any other termination, any and all monies and assets remaining in the Trust Fund, after the payment of expenses, shall be used for the continuance of the benefits provided by this Plan, until such monies and assets have been exhausted, unless some other disposition is required by law or regulations thereunder.

In no event shall any of the remaining monies or assets be

paid to or be recoverable by any participating employer, employer association, or union.

## SIGNATORY PARTIES

In witness whereof the parties have executed this instrument and have set their respective hands and seals this ___27th___ day of ___February___, 1989.

FOR THE EMPLOYERS

FOR THE SERVICE EMPLOYEES
INTERNATIONAL UNION, AFL-CIO,
CLC

# EXHIBIT 4

### STATEMENT OF POLICY FOR
### COLLECTION OF DELINQUENT CONTRIBUTIONS
(Revised November 15, 2003)

The Board of Trustees of the Service Employees International Union Health and Welfare Fund ("Fund") hereby adopts the following policy for the collection of delinquent contributions.

### SECTION 1
### General Policy

It is the policy of the Fund to make such diligent and systematic efforts as are appropriate under the circumstances to collect all employer contributions when they are due.

The Trustees have the legal right to exercise all remedies allowable under the Trust Agreement and under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), including but not limited to:

1.      The right to establish a date on which contributions are due and the format in which remittance reports supporting such contributions must be made, provided that such date and format requirements are not inconsistent with the terms of the collective bargaining agreement;

2.      The right to recover interest, liquidated damages, attorneys' fees, and any other expenses incurred by the Fund in collecting any delinquency;

3.      The right to establish a payroll review program;

4.      The right to conduct a review of the payroll records of all employees of the employers required to contribute to the Fund including, but not limited to, payroll ledgers, federal and state tax returns, IRS Form 941 and such other books and records of the employers that are necessary in order for the auditor to give an unqualified opinion that the proper contributions have been made;

5.      The right to require a participating employer to pay the cost of a payroll review plus interest, liquidated damages, attorneys' fees, and any other expenses incurred by the Fund in determining the amount of a delinquency and in collecting the delinquency;

6.      The right to require a bond or a cash deposit as security for prompt future payments due from an employer that has been habitually delinquent in its contributions to the Fund;

7.      The right to take all other steps and to perform all other acts that are necessary in order to collect contributions due to the Fund in a timely and expeditious manner; and

8.      The right to terminate a delinquent employer's participation in the Fund in appropriate circumstances, as determined by the Trustees in their sole discretion.

1

The procedures set forth herein shall be followed unless the Board of Trustees determines that they should be waived in a particular instance.

## SECTION 2
## Collection Procedure

In accordance with the Trust Agreement, ERISA, and the above declaration policy, the following procedures shall be required of all participating employers and the steps set out below shall be taken by the Fund Office to effectuate the collection of delinquent contributions.

1.      Contributions and supporting remittance reports are due on the date the employer's collective bargaining agreement requires payment. If the collective bargaining agreement does not state a due date, the due date is as follows: (a) if there is immediate coverage (available only to employers paying monthly rates), payment is due by the 15th day of the previous month (*i.e.*, contributions due by the 15th of December provide eligibility for January) or (b) if there is delayed eligibility (available to employers paying hourly or monthly rates), contributions are due by the 15th of the month after the month worked. (*i.e.*, contributions for the month of January are due by the 15th of February and provide eligibility for the month of March).

2.      Initial contributions and supporting remittance reports for employers who are newly subject to collective bargaining agreements (*i.e.*, for all months necessary to bring the employee group current) are due no later than the 15th day of the month following the month in which the collective bargaining agreement was executed by the bargaining parties.

3.      Retroactive contributions made on behalf of probationary employees shall be considered timely made if paid by the 15th of the month following the month in which the relevant probationary period expired.

4.      Contributions shall not be regarded as having been made timely unless accompanied by a completed remittance report in the format required by the Fund. If contributions are received without an acceptable remittance report, liquidated damages will be charged as set forth in paragraph 5 below. The Executive Director may approve the submission of reports in other forms, including on magnetic media, if he determines that providing reports in such form will not cause additional burden or expense to the Fund.

5.      If contributions and supporting remittance reports are not received by the end of the month in which they are due, the employer shall, in addition to the underlying delinquent contributions owed, be obligated to pay to the Fund interest. Interest shall be calculated from the due date for the delinquent contributions at the rate of ten percent (10%) per annum. In addition, the employer's employees will not be eligible for health coverage until the delinquency is paid. If contributions and supporting remittance report(s) are not received by the 30th day of the month following the month in which contributions are due, liquidated damages in the amount of 5% of contributions (or, if greater, $50), shall also be due from the employer. Notwithstanding the foregoing, interest calculated to be less

2

than one dollar ($1.00) shall not be charged. If an employer is delinquent, the Fund reserves the right to apply future payments to the oldest amount due first, even if the amount due must be estimated.

6.    If the contributions and remittance reports are not received by the last day of the month in which they were due, Fund office staff shall send a notice of delinquency to the employer requesting immediate payment of the delinquent contributions plus interest thereon. The notice shall demand immediate payment of all delinquent contributions and inform the delinquent employer that, unless the full amount due is received in the Fund's offices by the 30th day of the month following the month in which the contributions were due, the matter will be referred to the Fund's legal counsel for collection. The notice shall further advise the employer that contributions and supporting remittance reports must be received by that date if it wishes to avoid the imposition of liquidated damages.

7.    If the contributions and remittance report(s) are not received by the 30th day of the month following that in which the contributions were due, the delinquency shall be referred to legal counsel. Fund office staff also shall refer to counsel the cases of employers who have accrued balances of unpaid interest or liquidated damages that equal or exceed $1,000. Legal counsel shall follow the procedures set out in Section 3 of these Rules.

8.    If an employer makes payment of the amount of the delinquency but not payment of accrued interest and other amounts owed, acceptance of the payment shall not constitute a waiver of the Fund's claim for such accrued interest or other amounts.

9.    Any unpaid interest or liquidated damages shall be billed to the employer on the monthly delinquency letters or pre-printed remittance forms generated each month.

10.    The Executive Director may suspend collection procedures for liquidated damages and interest when extenuating circumstances are present. However, the Executive Director shall prepare a report to the Trustees of all such actions for their consideration at their next scheduled meeting. The Trustees may, at that time, waive such charges or direct that collection proceedings be reinstated.

11.    There shall be a charge for retroactive corrections (adding employees omitted from a prior report) made by any employer. The employer shall be charged $50 per each corrected remittance report submitted. This fee is imposed in recognition of the fact that the Fund will be required, and will incur expenses, to ensure proper benefit eligibility for any participant who is added retroactively. The employer will also owe interest from the date the contributions should have been paid at the rate of ten percent (10%) per annum.

12.    If an employer advises the Fund office that it has paid for coverage for an ineligible employee, the Trustees, in their sole discretion, may agree to grant the employer credit for one month's contributions for the month prior to the month that the Fund office is notified by the employer. The Trustees may delegate this authority to Fund office staff who will be authorized to grant such credits only if there is sufficient evidence that no benefits have been paid on the participant's behalf during the period at issue.

3

13.    If an employer believes it has overpaid contributions by paying an incorrect rate or making duplicate contributions for the same employee, the employer shall bring the matter to the attention of the Executive Director. If the Executive Director determines that the employer overpaid its contributions for a period of not more than three (3) months, and that such overpayment did not result in making an otherwise ineligible employee eligible for benefits, the Executive Director may, in his sole discretion, give the employer a credit for the amount of such overpayment. If a participating employer notifies the Executive Director that it has mistakenly remitted funds that were clearly intended to be paid to another entity and the employer has no outstanding balances owed to the Fund, the Executive Director may, in his sole discretion, give the employer a refund. If a participating employer notifies the Executive that it has mistakenly submitted excess contributions because of a mathematical error on its remittance report, the Executive Director may, in his sole discretion, give the employer a refund if the excess contributions are so great that the employer would be required to take a credit for more than three months. If the employer is not a participating employer at the time the request is made and the employer has no outstanding amounts due to the Fund, a refund may be made to the employer under any of the preceding circumstances. The Executive Director shall refer to the Trustees or the Delinquency Committee described in Section 3, Paragraph 9, any requests for credit or refund for overpayment occurring during a period of more than three (3) months' duration. The Trustees or the Delinquency Committee may, in their sole discretion, authorize credits or refunds for overpayments for periods of time longer than three (3) months. All credits or refunds for overpayments shall be issued only in a manner consistent with ERISA section 403(c)(2) and Internal Revenue Code section 401(a)(2). No interest shall be due to any employer on any overpayment. No refund of excess contributions shall be granted by the Fund without a written request for such refund having been received from the employer within two (2) years from the date that such excess contributions were received by the Fund. If the Fund notifies an employer that it has an overpayment, the employer must request a refund within six (6) months from the date the Fund notifies the employer.

## SECTION 3
### Legal Action and Settlement

1.    When a delinquency matter is turned over to the Fund's legal counsel for collection, legal counsel shall send a letter to the employer demanding the required remittance report, payment of the delinquent contributions and advising the employer of its liability for interest, liquidated damages and costs.

2.    In the event an employer fails to pay the delinquent contributions and submit the remittance report(s) within twenty (20) days after legal counsel's demand for payment, legal counsel shall initiate legal action for any delinquent contributions in excess of $500.00, unless legal counsel recommends a different course of action based upon pertinent factors which shall include, but are not limited to the following:

a.    the financial condition of the employer,

4

b.      the probability of collecting a judgement once it is obtained,

c.      the employer's past performance as a contributing employer,

d.      the amount of the delinquency,

e.      the length of time the delinquent amount has been owed,

f.      the likelihood that the costs of the suit will exceed the recovery; and

g.      any other factor that, in the discretion of the legal counsel, may have a material bearing on the collection of the delinquent contributions.

Legal counsel, where appropriate, shall also file a charge under the McNamara O'Hara Service Contract Act with the Department of Labor where the employees for whom the contributions are due are performing work covered by the Service Contract Act.

Any recommendation by legal counsel against initiating suit to collect delinquent contributions shall be submitted to the Board of Trustees. A lawsuit shall not be commenced pending action of the Trustees on such recommendation. The Board of Trustees reserves the right to reject a recommendation by legal counsel and to authorize the commencement of a suit.

3.      Legal counsel is authorized to enter into settlement negotiations with delinquent employers. Without further approval of the Board of Trustees, legal counsel is authorized to settle claims against delinquent employers in instances where the delinquent employer promises immediate payment of the delinquent contributions owed, interest thereon, attorney's fees and costs. Any proposed settlement which waives or compromises those amounts must be approved by the Board of Trustees. It shall be the responsibility of Fund Counsel to advise the Fund whether, and when, to reinstate any previously waived charges.

4.      Legal counsel has the authority to reject any proposal for settlement that contemplates payment of amounts due over a period of time or if its acceptance would result in collection of less than the total amount owed. Such rejection shall be subject to the Board of Trustee's subsequent review.

5.      Any settlement may postpone the collection of interest, liquidated damages, or attorney's fees until a subsequent delinquency by the same employer, if the collection of such amounts would involve unwarranted expense or risk to the Fund. Such a written settlement providing for nonpayment of interest, late payment penalty, liquidated damages, costs or attorneys' fees may contain a reservation to the Trustees of the right to collect such amounts in the event the employer again becomes delinquent in paying contributions during a period not to exceed three (3) years after the settlement is consummated.

6.      The Board of Trustees reserves the right to accept or reject an employer's proposal to

5

pay delinquent contributions, interest, liquidated damages, and attorneys' fees over a period of time and to compromise any claim or delinquent account as recommended by legal counsel; provided however, that any such decision to extend the time for payment, or to compromise the amount owing, complies with Prohibited Transaction Exemption 76-1 promulgated by the United States Department of Labor.

7.    Settlements calling for payments over time or compromising the amount owed, including interest, liquidated damages, attorneys' fees, or costs, must be in writing and signed on behalf of the Fund and the employer.

8.    Notwithstanding the procedures set out in this policy, the Board of Trustees or Executive Director may refer any delinquent account to legal counsel at an earlier or later date than provided for herein where circumstances warrant that the collection action be expedited or delayed.

9.    The Trustees may appoint a Committee of at least one (1) Employer and one (1) Union Trustee to act on behalf of the Board of Trustees, as provided for under this policy.

### SECTION 4
### Payroll Review Procedure

1.    The Board of Trustees shall randomly select such number of participating employers each year for payroll reviews as it deems from time to time to be appropriate. The Board of Trustees may, at its discretion, delegate the task of selecting which employers shall be reviewed pursuant to this policy to the Executive Director. The Board of Trustees, in the exercise of their discretion, may also choose for a payroll review an employer who was not randomly selected.

2.    Unless the Trustees determine otherwise, the period covered by the payroll review shall be not less than one (1) year.

3.    The right of the Fund to conduct a review of an employer's records shall survive the termination of an employer's collective bargaining agreement, any other written agreement under which the employer is contributing to the Fund, or any bankruptcy filing.

4.    The Executive Director or his designee shall forward a letter to the employer advising it of the impending review citing the Trustee's authority to conduct the review.

5.    The auditor shall schedule the payroll review with the employer, who shall make available to the auditor all books and records which the auditor determines are required. Upon a request from the auditor, the employer shall forward the pertinent records to the auditor or make the records available to the auditor for inspection at a location in the Washington, D.C. metropolitan area. Upon approval of the Trustees, Executive Director, or the committee appointed under Section 3, Paragraph 9, the auditor may expand the scope of the payroll review to cover a longer period of time.

6

6.    Where a payroll review of an employer is conducted and the payroll review discloses an underpayment, a letter shall be sent to the employer advising of the underpayment and requesting the employer to make payment of the underpayment, liquidated damages, interest, auditor's fees and attorneys' fees within thirty (30) days of the date of its receipt of the letter.

7.    After the expiration of the thirty (30) day period, a second letter shall be sent to the employer demanding that the underpayment be remitted immediately. If payment is not received within ten (10) days of the date of such letter, Fund office staff will turn the matter over to Fund Counsel who will then send a third letter. If payment is not received following the third request, legal counsel shall file suit against the employer and file a Service Contract Act charge against the employer where appropriate.

8.    In the event an employer refuses to permit a payroll review upon request by the Trustees or if the employer refuses the Fund auditor access to pertinent records, the Fund auditor shall refer the matter to legal counsel. In addition to legal fees and costs associated with compelling compliance, the employer shall be obligated to pay any travel expenses incurred by the auditor.

9.    Legal counsel shall thereafter demand that the employer make available such books and records as are necessary for the Fund auditor to conduct the payroll review. If, within a reasonable period of time not to exceed 60 days, the records are not forwarded to the auditor or made available at a Washington, D.C. Metropolitan area location or at such other location as the Trustees may agree to, the employer shall be liable for any attorneys' fees and costs incurred by the Fund in enforcing the Fund's right to review the employer's records. If necessary, upon approval of the Trustees or Executive Director, counsel shall institute legal action to enforce the Trustees' right to conduct a payroll review and the employer shall be assessed all costs and attorney's fees incurred as a result of the employer's refusal to permit the payroll review or refusal to make available all pertinent records.

10.    Employers will be billed by site whenever the net principal amounts owed are in excess of $50.00. Billings will be calculated as follows:

a.    Principal: This will be the total of the amount owed for each month showing a net underpayment during the audit period.

PLUS

b.    Interest: Calculated monthly at 10% per annum of the principal amount.

PLUS

c.    Liquidated Damages: Calculated at 5% of the principal amount, or, if greater, $50.

PLUS, if applicable,

d.    Testing Fee: The testing fee will include the auditor's time and expenses in

7

performing the payroll review. The cost of the payroll review, in addition to any other applicable fees and costs, shall be payable by the employer whenever a review of an employer's record discloses principal due equal to or greater than:

(i)     in the case of an employer that contributed (or should have contributed) $50,000 or more in any contract year, 5% of the employer's total required contributions for such period,

or

(ii)    in the case of an employer that contributed (or should have contributed) $10,000 or more but less than $50,000 in any contract year, the lesser of

(A)     7% of the employer's total required contributions for such period; or

(B)     $2,500

or

(iii)   in the case of an employer that annually contributed (or should have contributed) less than $10,000, the lesser of

(A)     10% of the employer's total required contributions for such period; or

or

(B)     $1,000.

The testing fee will be charged for the entire audit period whenever one of the above thresholds is met in any of the calendar years tested.

11.     The Board of Trustees shall authorize the Executive Director to make decisions regarding the collection of audit billings following the advice of legal counsel. In such cases where legal counsel has advised that the cost of further collection efforts for unsubstantial amounts would not be financially prudent to pursue, the Executive Director may then instruct that no further collection efforts are to be made.

## SECTION 5
### Interest, Liquidated Damages, Attorneys' Fees and Costs

1.     Interest owed by a delinquent employer shall be calculated from the due date for the delinquent contributions at the rate of ten percent (10%) per annum.

2.     In the event a lawsuit or other legal action is filed pursuant to Section 3, and notwithstanding any other provisions of this policy, liquidated damages shall be due. The amount of the

liquidated damages shall be the greater of:

        a.     The interest on the delinquent contributions determined in accordance with paragraph 1 above;

or

        b.     20% of the delinquent contributions.

3.     In the event a lawsuit or other legal action is filed, attorneys' fees shall be assessed against a delinquent employer, at the same hourly rate charged to the Fund for such services, for all time spent by legal counsel in collection efforts pursuant to Section 3 hereof or in enforcing the Board of Trustees' rights to payroll reviews pursuant to Section 4 hereof.

4.     All costs actually incurred in court actions for collection of delinquent contributions to enforce the Trustees' right to conduct a payroll review of the employer's records shall be assessed against the delinquent employer, including, but not limited to, filing fees, fees for service of process, copying charges, postage, and such other costs as would otherwise be charged to the Fund.

5.     The obligations to pay interest, liquidated damages and fees chargeable under this policy are contractual in nature and independent of the provisions of ERISA Section 502(g). In consideration for permitting its participation, or continued participation, in the Fund, each contributing employer agrees to be obligated to pay all interest, liquidated damages, fees, and costs chargeable pursuant to this policy.

6.     Liquidated damages are provided herein because actual damages are not susceptible of precise prediction. Liquidated damages are estimated, to the best of the Trustees' ability, to approximate the cost to the Fund of the additional administrative expenses and losses caused by a delinquency. Such costs include, but are not limited to, expenses related to staff employees who must be assigned to collection activities, legal expenses, and expenses for additional accounting and reporting activities.

### SECTION 6
### Reports and Records

1.     Legal counsel and the Executive Director shall each prepare a delinquency report to be presented at each Board of Trustees meeting. The report shall show all employers that are delinquent. The determination of the Board with respect to action on such delinquencies, and the specific bases therefore, shall be recorded in the minutes.

2.     The Executive Director shall maintain a file of currently effective collective bargaining agreements and other agreements detailing the basis upon which employers are obligated to make contributions to the Fund.

### SECTION 7
### Effective Date

The revisions to this Policy shall be effective December 15, 2003.

9